## MARY O'HARE

*v.* ;

## THE CHICAGO, MADISON AND NORTHERN RAILROAD COMPANY.

*Filed at Ottawa October 31, 1891.*

139   151
169   164
170   601

139   151
91a[13]343

139   151
191   [13]344

139   151
196   [4]377

139   151
200   [9] 74
200   248

139   151
203   173
206   [11]447

1. EMINENT DOMAIN—*jurisdictional facts to be shown in petition in condemnation proceedings.* The conditions to the right of a railway company to exercise the power of eminent domain are, its corporate existence under the laws of this State, and the fact that it has located its railway over the land sought, and that it has been unable to agree with the owner, if the owner is competent to contract, upon the compensation to be paid therefor; and these are jurisdictional facts, which must be shown by the petition.

2. SAME—*proof of allegations of petition.* While no formal pleadings after the petition are proper or allowable, yet if the land owner traverses the material allegations of the petition,—that is, those averments necessary to confer jurisdiction,—the court must determine their truth or falsity, and whether the facts exist warranting the appropriation of the land for the particular public use proposed, and that the use is a public one. The necessity exists, in all such cases, for the petitioner to introduce such evidence as will, *prima facie,* at least, prove the disputed allegations of the petition.

3. SAME—*traversing allegations of petition for condemnation.* While this court has held that no answer or other formal pleading is required of the defendant, or even allowable, it was not thereby intended to hold that the averments of the petition can not be traversed, or that such averments are conclusive upon the land owner.

4. SAME—*jurisdictional facts determined by the court.* As the jurisdictional facts must exist to authorize such ascertainment by a jury, it follows that the court should, preliminary to the finding by the jury, determine that the right to condemn in the particular case exists. If the necessary facts do not exist, the petition should be dismissed; but if they are found by the court to exist, a jury should be impaneled to fix the just compensation. These preliminary questions are to be determined summarily by the court, and its rulings will be subject to review.

5. SAME—*discretion of railway company as to amount of land necessary.* Every railway company is vested with a large discretion to determine, within statutory and constitutional limitations, the amount of land necessary for its corporate purposes. In a modified degree such a company is permitted to judge for itself the amount of land it needs.

This right is, however, subject to the limitations named, and subordinate to the right of the courts to prevent an abuse of the power.

6.   Where a railway company locates its railway across a lot, and determines that such lot is necessary for its right of way, in the absence of anything showing, or tending to show, that the taking of the land proposed to be appropriated is unreasonable, this will be held to show, *prima facie*, the necessity for its appropriation.

7.   SAME—*exercise of the power determined by the legislature.* The legislative branch of the government alone determines whether the exigency exists which calls for the exercise of the power of eminent domain, and for its delegation to municipal or other public corporations of its creation.

8.   SAME—*sole purpose of condemnation proceedings, to determine compensation.* The sole purpose of a condemnation proceeding is to ascertain the just compensation to be made to the land owner for the property taken, and the statute contemplates the submission of no other question, in such cases, to the jury.

9.   SAME—*evidence of value of land—proof of voluntary sales.* On the trial of a condemnation proceeding, evidence of voluntary sales of other lands in the vicinity, and similarly situated, is admissible in evidence to aid in estimating the value of the land to be condemned; but it is incumbent on the party offering such proof to show that the lands so sold were similar in locality and character to the land in question.

10.   SAME—*admissibility of deed to other lands to show value.* On a proceeding to condemn land for a right of way, the defendant offered in evidence a deed, for the purpose of showing a sale of property in the locality of that sought to be taken, but no evidence was offered to show that the sale was voluntary or in good faith, or whether the premises were improved or not, or if improved, the nature and character of the improvements, which the court refused to admit: *Held,* that the deed was properly excluded.

11.   The recital of the consideration in a deed, as between the parties thereto, may be admissible as evidence tending to show the amount paid, but even as between them it is not conclusive. As to strangers, or those not parties to it or in privity with the title, such recitals are but *ex parte* statements of the parties to the deed, and hearsay, and are not competent evidence.

12.   ATTORNEY—*right of county judge to practice as.* Where one county judge holds court for another, either from necessity or convenience, while so presiding he is prohibited by the statute from practicing as an attorney in the same court; but the fact that a county judge has some time in the past presided in another court in particular

cases will not necessarily disqualify him from afterward practicing as an attorney in such court.

13. JUROR—*examination on voir dire—acquaintance with an attorney.* On the examination of a juror on his *voir dire,* the court may, in his discretion, allow the juror to be asked if he knows an attorney who is claimed to be directly or indirectly interested in the case, for the purpose of enabling counsel to judge whether he will exercise his right of a peremptory challenge.

14. PRACTICE IN SUPREME COURT—*error will not always reverse.* The court, in a condemnation proceeding, refused to submit to the jury the issue whether the petitioner was unable to agree with the owner as to just compensation, but it afterward heard evidence which showed an inability to agree: *Held,* that if it was error not to try this issue before the hearing before the jury, it was one that did not prejudice the defendant.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. McARDLE & WHEELOCK, for the appellant:

The necessity for taking, and an attempt to purchase, the property from the owner, when he is competent to contract, are conditions precedent to a right to condemn. *Railroad Co.* v. *Sanford,* 23 Mich. 418; *Cunningham* v. *Railroad Co.* 61 Mo. 33; *Gilmer* v. *Lime Point,* 19 Cal. 47; *Gilbert* v. *Railroad Co.* 3 Johns. 108; *Railroad Co.* v. *Railroad Co.* 116 Ind. 578; *Lincoln* v. *Colusa Co.* 28 Cal. 663; *O'Hare* v. *Railroad Co.* 25 Pa. St. 445; *Railroad Co.* v. *Oregon,* 3 Ore. 178; *In re Railroad Co.* 78 N. Y. 557; *Reiterbaugh* v. *Railroad Co.* 21 Pa. St. 100; *Reed* v. *Railroad Co.* 126 Ill. 488.

Mr. ELBERT H. GARY, for the appellee:

Sales of property, to be competent evidence of value, must be voluntary and *bona fide.* Pierce on Railroads, 225; *White* v. *Railway Co.* 4 Cush. 440; *Sawyer* v. *City,* 144 Mass. 470; *Cobb* v. *Boston,* 112 id. 181.

There was sufficient proof of failure to agree, if any was necessary, but it was not. *Ward* v. *Railroad Co.* 119 Ill. 292; *Smith* v. *Railroad Co.* 105 id. 518.

The jury are not required to pass upon any questions, ex-cept such as affect the matter of damages. *Henry* v. *Railroad Co.* 121 Ill. 264.

As to right of railway company to determine the necessity of the land and its extent, see *Railroad Co.* v. *Wiltse,* 116 Ill. 454; *Smith* v. *Railroad Co.* 105 id. 511; *Railroad Co.* v. *Dix,* 109 id. 237.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Appellee filed its petition in the county court of Cook county, August 14, 1889, alleging that it is a corporation organized under the laws of Illinois, and has power to construct and operate, etc., a railroad in Illinois, and to take and appropri-ate land for right of way, etc., and has located its line of rail-road over certain lots, describing them; that Mary O'Hare and Edward O'Hare are the owners thereof; that certain per-sons named are in possession as tenants; that it has been unable to agree with said owners and occupants as to the compensation to be paid, and prays that just compensation be ascertained, conformable to law, etc.    April 3, 1890, appear-ance of Mary O'Hare was duly entered, and the case set for hearing April 16, 1890.    On the last named day, appellant, by her counsel, objected to E. H. Gary, who appeared as attor-ney for the petitioning company, being permitted to practice as an attorney in the county court of Cook county, or to act as attorney in said cause in said court, for the reason that he was then judge of the county court of DuPage county, and in the habit of presiding in the court in which this cause was depending.    Appellant offered to produce the record of the Cook county court, showing that Judge Gary had presided in that court, which was waived.    A colloquy ensued between court and counsel, from which it appears that Judge Gary had a law office in Chicago and was in the regular practice there, and had, at the request of the county judge of Cook county,

presided in that court in the trial of particular cases; that there was no arrangement for the trial of cases by him in the future; that when requested in the past to try particular cases, he would consent or refuse, as his business occupations would permit. The court overruled the motion.

It is insisted that the attorney fell within the prohibition of section 10, chapter 13, of the Revised Statutes, which is as follows: "No person who holds a commission as a justice of the Supreme Court, or as judge of any court of record, shall be permitted to practice as an attorney and counselor at law in the court in which he presides." Any county judge in the State, in case of the absence, death, resignation or inability of the judge of the county court in any county, may hold the same, and perform all the duties of the judge thereof during such absence, vacancy or disability. (Act of 1885, 3 Starr & Curtis, 152.) So, also, county judges may interchange with each other, as circuit judges may do, and "hold court for each other, and perform each other's duties, when they find it necessary or convenient." (Act of 1879, Starr & Curtis, 731.) While a judge was so presiding he would manifestly be inhibited from practicing as an attorney therein. The practice is one not to be commended, because of the tendency to bring the administration of the law into disrepute and contempt; yet we think the mere fact that at some time in the past, how remote does not appear, the judge had presided in particular cases, will not necessarily disqualify him to appear in the court as an attorney. There is no pretense that he had presided or would preside at that term of court. At the term in question he had no control of the records of the court. No juror or officer of the court was subject to his control or influence, so far as appears from this record, nor were any facts set up in support of the motion, showing or tending to show that by reason of his having presided in the court appellant would be prejudiced if he was permitted to appear as attorney for appellee. We are of the opinion that, under the facts

shown, the attorney here sought to be excluded did not fall within the statutory inhibition.

It is next urged that the court erred in permitting counsel for appellee, over the objection of appellant, to ask of the jurors, upon their *voir dire*, if they knew Alexander Sullivan. Upon objection being made, and counsel for appellee insisting that he was advised Sullivan was interested, the court, counsel, plaintiff and representatives of appellee retired out of the hearing of the jury, and the court heard evidence touching Sullivan's connection with the case, and as to the propriety of the question. It will be unnecessary to detail what then occurred. The result was, that the court overruled the objection, and permitted the question to be asked of each juror, over the objection of appellant. The only proper purpose of the question was, to enable counsel to determine whether he desired to exercise a peremptory challenge. It was assumed by counsel, upon alleged information, that Sullivan was directly or indirectly interested as attorney in the case, and it is not perceived why the court, in the exercise of a sound discretion, might not permit the inquiry for the purpose indicated. It can not be presumed, in the absence of any fact going to the jury showing or tending to show Sullivan's connection with the case, or some improper act of his in connection therewith, that from the fact of his connection with the case prejudice would be created in the minds of the jurors. If appellant feared such result it would have been entirely competent for her to have asked an instruction, and it would have been the duty of the court to have given it, repelling any presumption prejudicial to her or her cause that might arise because of the question.

It is next urged that the evidence fails to sustain the verdict,—that it is too small. The evidence bearing upon the value was conflicting, ranging from $7631 to $15,000. The verdict was for $9251, and it is clear that there is ample evidence upon which to predicate the finding. The witnesses

severally testified to their experience and means of knowledge, and the jury saw them and had opportunity to judge of their intelligence and fairness which we do not possess. Besides, the jury inspected the premises, and had the advantage of a personal view and observation, which they were authorized to consider in connection with the evidence heard. We are not therefore justified in interfering upon this ground.

It is next urged that the court erred in excluding a deed offered in evidence by appellant for the purpose of showing a sale of property in the locality of the premises sought to be condemned. The instrument offered purported to be a deed from one Gahan to Jeffreys, conveying lots 1 and 2, in Murray's subdivision of part of the south fraction of the northwest quarter of section 28, township 39, north, range 14, east of the third principal meridian. The property in dispute was lot 6, Healey's subdivision of lot 7, block 1, canal trustees' subdivision of section 29, in the same township and range. No evidence was offered showing or tending to show that the sale was voluntary or in good faith, or whether the premises were improved or not, or if improved, the nature and character of the improvements. Evidence of voluntary sales of other lands in the vicinity, and similarly situated, as affecting their value, is admissible in evidence to aid in estimating the value of the tract to be condemned. (*St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Haller*, 82 Ill. 211; *Chicago and Western Indiana Railroad Co.* v. *Maroney*, 95 id. 182.) But it is incumbent on the party offering such proof, to show that the lands so sold were similar in locality and character to the lands in question. (*King* v. *Iowa Railroad Co.* 34 Iowa, 458; *Cummings* v. *Des Moines and St. Louis Railroad Co.* 63 id. 397.) While the jury may, under the statute, inspect the property sought to be taken for the designated public use, there is no warrant for their viewing other property mentioned in the evidence of the witnesses. It is manifest, therefore, that to render the evidence competent it should be accompanied by

evidence, or offer of evidence, that will convey to the jury
some intelligent idea of the relative value of the properties.
If they are not similar in character, in location and improve-
ments, and no basis is furnished by which a comparison may
be made, the evidence could not aid in fixing the value of the
particular property.    Moreover, the only purpose of intro-
ducing this deed was to prove the price of the lots therein
mentioned, as tending to establish the value of the lot in con-
troversy, and this was to be done solely by the consideration
expressed in the deed.   The recital of the consideration in the
deed would, as between the parties to the deed, be admissible
evidence, as tending to show the amount paid, but as between
them it is not conclusive.   As to strangers to the deed,—that
is, those not parties to it or in privity with the title,—they are
*ex parte* statements of the parties to the deed.    They are, at
the most, admissions of the grantor and grantee in the deed,
and therefore hearsay, when offered against a stranger to the
deed. (*Sefeld* v. *Chicago, Milwaukee and St. Paul Railroad Co.*
67 Wis. 97.)    The deed was properly excluded.

Before the impaneling of the jury to assess compensation
began, appellant sought to traverse the allegations of the peti-
tion, and moved that the issues thus sought to be raised be
submitted to a jury for trial.   The court overruled the motion,
and ordered the impaneling of the jury to determine the com-
pensation to be paid, to proceed; to which appellant excepted.
It is insisted that the court erred in not submitting such issues
to the jury, so far, at least, as they questioned the necessity of
the appropriation of appellant's land to the corporate purposes
of appellee, and whether appellee had been unable to agree
with the owner as to compensation, before commencing con-
demnation proceedings.

Lying at the foundation of the right of appellee, as a rail-
way corporation, to exercise the right of eminent domain under
the laws of the State, were the conditions, that it was a rail-
way corporation organized under the laws of this State, that

it had located its railway, etc., over and upon the land proposed to be taken, and that it had been unable to agree with the owner, if the owner was competent to contract, upon the just compensation to be paid therefor. *Reed* v. *Ohio and Mississippi Railway Co.* 126 Ill. 48; *Chicago, Burlington and Quincy Railroad Co.* v. *Chamberlain,* 84 id. 333; *Booker* v. *Venice and Carondelet Railway Co.* 101 id. 333; *Bowman* v. *Venice and Carondelet Railway Co.* 102 id. 459; Rev. Stat. sec. 2, chap. 47, and sec. 17, chap. 114. These concurring, the statute authorized condemnation proceedings to be instituted, and. upon petition filed setting up these jurisdictional facts, and otherwise complying with the statute, authorizes a jury to be impaneled to ascertain the just compensation to be made to the owner for the property proposed to be appropriated to the public corporate use. We held in *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511, that no answer or other formal pleading is contemplated or proper. It was not, however, intended to be held that the allegations of the petition could not be traversed, or that the averments therein were conclusive upon the land owner. In the subsequent cases of *Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 Ill. 454, *Reed* v. *Ohio and Mississippi Railway Co.* 126 id. 48, and other cases, it was found that the purpose for which the land sought was not within the legislative grant, and therefore unauthorized. In *South Chicago Railroad Co.* v. *Dix,* 109 Ill. 237, a petition in the usual form was filed. Certain of the defendants filed their motion to dismiss the petition, supported by affidavit, and the petitioner filed affidavits in opposition. The ground of the motion was, that the track for which the property sought to be appropriated was an independent branch road, and not a switch, as alleged in the petition, and therefore there was no authority in the petitioning corporation to build it, and condemn therefor. The court below, on the proof thus made, dismissed the petition. On appeal to this court, on consideration of the facts thus shown, this court held that

the court below erred, and reversed its judgment and remanded the cause, thus recognizing the right of the land owner to controvert the allegations of the petition.

Upon the filing of a petition containing the proper averments, the court must act, and if the jurisdictional facts alleged are not disputed or controverted, the court will be authorized to proceed to impanel a jury and ascertain the compensation to be awarded. In such cases, there being no objection, or any attempt to traverse the petition, the court may properly treat the petition as admitted, as in case of default, and proceed to fix the compensation without proof of the truth of its allegations. Every requirement of the statute authorizing the ascertainment of the compensation by the jury would then have been complied with, and the direction of the statute is mandatory as to the further proceedings. But while no formal pleadings are proper or allowable, it is seen, if the land owner traverses the material allegations of the petition,—that is, those averments necessary to confer jurisdiction,—the court must determine their truth or falsity, and whether the facts exist warranting the appropriation of the land of the citizen, by the corporation seeking it, for the particular public use proposed, and that the use is a public use. The necessity will therefore exist, in all such cases, for the petitioner to introduce such evidence as will, *prima facie*, at least, prove the traversed or disputed allegations of the petition. The sole purpose of the condemnation proceeding is to ascertain the just compensation to be made to the land owner for the property taken, and the statute contemplates the submission of no other question to a jury in such cases. (*Smith* v. *Chicago and Western Indiana Railroad Co. supra.*) As the controverted jurisdictional facts must exist to authorize such ascertainment by a jury, it follows that the court should, preliminary to such ascertainment, determine that the right of condemnation in the particular case exists, or that it does not. If it does not, if the facts necessary to authorize the taking of the particular property by the peti-

tioner for the proposed use do not concur, the petition should be dismissed; if they are found to exist, a jury should be impaneled and just compensation be ascertained, conformable to the statute.

As said in the case last cited, the court is clothed with ample power to prevent any abuse of the right of eminent domain. The questions arising preliminary to the submission to the jury, in such cases, are to be determined summarily by the court, and its rulings will be subject to review. (*South Chicago Railroad Co.* v. *Dix, supra.*) The legislative branch of government alone determines whether the exigency exists which calls for the exercise of the power of eminent domain, and for its delegation to municipal or other public corporations of its creation. It was shown that appellee was a railway corporation, *de facto*, at least, and had, by its proper officials, located its line of railway over and upon the lot of appellant. It is empowered to locate its line in its discretion or that of its proper officials, and granted the power of eminent domain in acquiring its right of way. We said in the *Wiltse case, supra,* that there is, of necessity, lodged in railway companies, to be exercised through their officers, a large discretion to determine, within the statutory and constitutional limitations, the amount of land reasonably necessary for its corporate purposes; and in *Smith* v. *Chicago and Western Indiana Railroad Co. supra,* we said: "Every company seeking to condemn land for public improvement must, in a modified degree, be permitted to judge for itself as to what amount is necessary for such purpose." This right is held to be subject to the limitations before named, and subordinate to the right of the courts to prevent an abuse of the power. *Hayes* v. *Risher,* 32 Pa. St. 169; *Southern Pacific Railroad Co.* v. *Raymond,* 53 Col. 223; *Tracy* v. *Railroad Co.* 80 Ky. 259; *New York Railway Co.* v. *Western Gas Light Co.* 63 N. Y. 326. The appellee company having located its railway across appellant's lot, and determined that the lot

was necessary for its railroad right of way, in the absence of anything showing or tending to show that the taking of the land proposed to be appropriated for that purpose was unreasonable, must be held to show, *prima facie*, the necessity for its appropriation.

In respect of the last contention, that the court erred in refusing to try the issue sought to be made that appellee had been unable to agree with the owner before impaneling the jury and ascertaining the damages it is sufficient to say, there was no prejudicial error in this ruling of the court. If it be conceded that the court erred in not requiring evidence thereof by the petitioner before ascertaining the compensation to be made, it was not prejudicial error. Upon the court ruling that evidence upon that subject was to the court, only, as it properly ruled, it was stipulated that the evidence might be heard at any time, to suit the convenience of the parties, saving to appellant her exception to the ruling of the court in refusing to submit the question to a jury. After the verdict, evidence by both parties was introduced and heard by the court, and the allegations of the petition found to be true. Without extending this opinion by a discussion of the evidence, it is sufficient that we have considered it, and are unable to say the court erred in its finding.

Other grounds for reversal are urged, which we have examined, but do not regard of sufficient merit to warrant discussion.

Finding no error for which the judgment should be reversed, it is accordingly affirmed.

*Judgment affirmed.*