ATLANTIC AND BIRMINGHAM RAILROAD COMPANY
*v.* PENNY, and *vice versa.*

1. Before this court can consider exceptions pendente lite, an assignment of error thereon must be made in the bill of exceptions, or filed in this court on or before the call of the case. The failure to assign error in one of these methods will result in a dismissal of the writ of error, whether it be sued out upon a main or a cross-bill of exceptions.

2. In a proceeding under the Civil Code, §4657 et seq., for the purpose of acquiring private property for public purposes, the sole question to be passed upon by the assessors, or a jury in the superior court on appeal, is the amount of compensation to be paid. Whether the quantity of land sought to be taken is necessary and proper for the purpose for which it is sought is a question not involved in this proceeding.

3. Under the general railroad law in the present code, the railroad company is allowed to appropriate for a right of way a strip of land not exceeding in width two hundred feet. Whether a less quantity shall be taken for this purpose is left to the discretion of the company.

4. Under the general railroad law referred to in the preceding note, a railroad company is authorized to take, for the purpose of cuttings and embankments

and for obtaining gravel and other material, as much land as may be neces-
sary for these purposes, and it is authorized to acquire, for stations, ter-
minal facilities, and the like, such quantity of land as may be necessary and
proper for these purposes ; the company being vested with a discretion to
determine, in the first instance, how much land is necessary.    If the com-
pany abuses the discretion thus vested in it, a court of equity may by
injunction so restrain it as to keep it within the limits of its charter.

Argued January 16, — Decided February 13, 1904.

Appeal from condemnation proceedings.    Before Judge Little-
john.    Dooly superior court.    April 18, 1903.

*J. L. Sweat, J. G. Jones,* and *W. F. George,* for plaintiff.
*D. A. R. Crum,* for defendant.

Совв, J.    The Atlantic and Birmingham Railroad Company
instituted proceedings to condemn "two hundred and fifty (250)
feet right of way, sixty feet on the east, and one hundred and
ninety feet on west side of the center line," through a described
tract of land, the property of Z. T. Penny.    A majority of the
assessors chosen in the manner prescribed by law filed an award
fixing the damages to be paid at $400.    The third assessor re-
fused to agree to this, and filed with the award a writing stating
that in his opinion the amount should have been $500.    Penny
entered an appeal from the award of the assessors to the superior
court.    When the case came on for a hearing in the superior
court, Penny filed a written motion to dismiss the entire proceed-
ing, upon the ground that the amount of land sought to be taken
was not necessary for the right of way, stations, terminal facili-
ties, cuttings, embankments, and other purposes for which the
railroad company could lawfully take private property ; that un-
der its charter 100 feet was all that could be condemned for a
right of way, and that 50 feet on each side of the track would be
ample for all of the legitimate purposes of the company ; and that
the real purpose of the condemnation was to secure property to
be leased for factories, plants, business houses, etc.    The plaintiff
then amended its proceedings by alleging that the land sought to
be condemned was necessary and required, not only as a right of
way, but for a freight and passenger depot and purposes there-
with connected, including station grounds, yards, tracks, ware-
houses, etc.    The court allowed the amendment, and then over-
ruled the motion to dismiss.    Penny filed exceptions pendente

lite to these rulings. The case proceeded to trial, and resulted in a finding by the jury that the company was entitled to condemn only 200 feet, and fixing the value of the land embraced within these limits at $275 per acre. Judgment was entered on this verdict. The company made a motion for a new trial, on the ground that the verdict was contrary to law and the evidence. The court overruled the motion, and the company excepted. Penny filed a paper which recited the demurrer to the proceedings, the trial of the case, the motion to dismiss, the amendment by the railroad company, and the rulings of the court on the questions thus raised. The paper also recited that exceptions pendente lite had been filed to these rulings, and specified, as parts of the record to be transmitted, the motion to dismiss, the amendment, order of the judge thereon, and exceptions pendente lite. This paper was certified by the judge as a bill of exceptions, but it did not contain any assignment of error on any ruling or decision of the court or on the exceptions pendente lite, nor was error assigned on these exceptions in this court after the case reached here.

1. Whether the paper filed by Penny be considered as a cross-bill of exceptions or as an independent bill, it will have to be dismissed for want of any assignment of error. *Jackson* v. *Fitzpatrick*, 114 *Ga.* 364. Even if it had contained an assignment of error upon the exceptions pendente lite, it would have been defective as an independent bill, because in such bill of exceptions "there must be some legal assignment of error on what transpired at the trial term, in order to bring up an assignment of error upon exceptions pendente lite filed at the appearance term." *Barge* v. *Robinson*, 115 *Ga.* 41, and cit. The exceptions pendente lite not being before us, it can not be determined in the present case whether proceedings instituted under the Civil Code, § 4657 et seq., for the purpose of condemning private property for a public use, are amendable at all, or whether in the present case they were amendable in the particular indicated in the foregoing statement of facts.

2-4. Private property can not be taken for public use unless there is a necessity for such taking; for the taking of property when not at all necessary for a public purpose, or the taking of more property than is necessary, for a given public purpose, is in effect a taking for private use. Randolph on Em. Dom. §§ 185,

186; 10 Am. & Eng. Enc. L. (2d ed.) 1057; 3 Ell. R. R. § 952; New Central Coal Co. *v.* Coal & Iron Co., 37 Md. 537, 539; Matter of N. Y. Cen. R. Co., 66 N. Y. 407; Highland Boy Gold Min. Co. *v.* Strickley, 116 Fed. 852 (5).     Under the present constitution of this State the general rule is, so far as private corporations are concerned, that the General Assembly shall pass upon this question of necessity by general laws providing what classes of corporations shall be authorized to exercise the power of eminent domain.     Civil Code, § 5780.     In many instances where it is proper for the power of eminent domain to be conferred upon corporations so as to authorize the taking of land, it is impracticable in a general law to prescribe the exact quantity that shall be taken; and this must be determined by some authority to whom the law delegates the power to decide this question.     Wherever it is practicable for the quantity of land to be determined, it is best that it should be fixed in the law, and in many instances this can be done.     The general railroad law of this State prescribes that the right of way proper of a railroad constructed under the provisions of that law shall not exceed 200 feet in width.     The corporation is given a discretion as to the amount to be taken, limited in the manner indicated.     The law recognizes, however, that there may be places where the company could not, within those limits, obtain earth and other material for necessary cuttings and embankments; and it is therefore prescribed that for this purpose the company may "take as much land as may be necessary for the proper construction, operation, and security" of the road. Civil Code, § 2167 (4).     See, in this connection, *Hopkins* v. *Railroad,* 97 *Ga.* 107.

The exact quantity of land that may be necessary for the construction and maintenance of stations, terminal facilities, and the like can not be definitely fixed, even by prescribing a maximum amount, as in case of the right of way; and therefore the General Assembly has prescribed that the company may acquire as much "as may be necessary" for this purpose.     § 2167 (3).     It is provided that in the event the company can not procure from the owners title to the right of way or other lands necessary and proper for the construction of stations, terminal facilities, and the like, such property may be acquired in the manner prescribed in the code.     Civil Code, § 2170.     The manner prescribed in the

code is that set forth in section 4657 et seq.  The general railroad law does not in terms declare who shall determine the question as to how much land shall be taken for the right of way within the limits prescribed, nor how much land shall be taken for cuttings, embankments, stations, terminal facilities, etc.  Nor is there anything in those provisions of the code relating to the manner in which private property may be taken for a public use, which determines who shall pass upon the question of necessity for the taking and of the quantity of land necessary for the public purpose for which condemnation is sought.  Such being the case, the only question which can be determined by the assessors or by the jury on appeal is the amount of compensation to be paid.  See, in this connection, O'Hare v. Railroad Company (Ill.), 28 N. E. 923 (5).  The code provides that "if the parties can not agree upon the compensation to be paid, the same shall be assessed and determined" in the manner indicated in the code. § 4659.  The code prescribes the form of award to be made, and in this form there is no reference to any matter except the amount of money to be paid as compensation.  § 4676.  Under the general railroad law express authority is given to take private property for the purposes indicated in that act.  It is therefore necessary that the quantity to be taken shall be fixed by some person, and from the silence of the act with reference to the person who shall determine this question it is to be inferred that the corporation is to have authority, in the first instance, to judge of this matter.  Such seems to be the rule laid down in other jurisdictions.  See 10 Am. & Eng. Enc. L. (2d ed.) 1057 (3); 1 Lewis on Em. Dom. (2d ed.) § 279, p. 675; Elridge v. Smith, 34 Vt. 485; Smith v. Railroad Co. (Ill.), 14 Am. & Eng. R. Cas. 385; Dietricks v. R. Co. (Neb.), 13 N. E. 624 (3).

If the land sought to be taken is to be used for the purpose of a right of way only, the corporation must determine how much it shall take, and in no event can it take more than a strip 200 feet in width.  If the land is sought to be taken for the purpose of making necessary cuttings and embankments, or for stations, terminal facilities, and the like, the corporation, after an investigation as to its needs, is authorized, under the act, to determine in the first instance how much is necessary for these purposes. After the corporation has determined this question, if it can not

acquire the title by contract from the owners, it may proceed to condemn the land under the law above referred to. If it does so proceed, and the assessors, or the jury on appeal, fix the amount of compensation to be paid, and the corporation pays this amount after final judgment by the assessors, or by the court if an appeal is taken, it acquires the right to use the property for the purposes and for the time authorized by law. Of course, we are not to be understood as ruling that this discretion of the corporation to determine the quantity of land necessary is not subject to control if abused. An unlimited and unrestrained power of this kind might be subject to great abuse, and the General Assembly did not, of course, intend to make the person seeking to condemn the final judge of necessity and quantity. If the proceeding authorized by law is instituted and the amount is fixed in the proper manner and by the proper authorities, and the company pays this sum, which is accepted by the landowner, the owner is thereafter concluded on the question of the necessity for the taking and the quantity which is necessary for the purposes for which condemnation is sought. While there is no provision in the general railroad law, or in the law providing the method of condemnation, for raising the question as to the necessity for taking the land sought to be condemned, if an effort should be made to appropriate more land than is necessary for the purpose for which condemnation is sought, the landowner may appeal to a court of equity to interfere by injunction, and thus have the question of necessity and quantity determined before an award is made by the assessors. How far the act of the property owner in appointing an assessor and proceeding to a hearing before the assessors may amount to a waiver of his right to question the necessity of taking the quantity of land sought to be condemned will not now be determined. Nor is the question of how far a court of equity would in a given case supervise the action of the legislature in declaring what amount of land is necessary involved in the present case. It would seem that the question of necessity would be open to investigation by the courts even after the legislature has passed on it, and it has been so held. See 3 Ell. R. R. § 952, p. 1338. But, as stated above, we make no ruling on this question. We are clear that the jury to whom the case was submitted on appeal had no right to pass on any question save that relating to the

amount of compensation to be paid, and that the verdict reducing the quantity of land which the railroad company sought to condemn was unauthorized.

*Judgment on the bill of exceptions of the railroad company reversed; writ of error sued out by Penny dismissed. All the Justices concur, except Simmons, C. J., absent.*