# UNITED STATES ex rel. RILEY v. BALTIMORE & OHIO RAILROAD COMPANY.

EMINENT DOMAIN; CORPORATIONS; RAILROADS; MANDAMUS.

1. A corporation having power to condemn lands must be permitted to judge for itself what amount of land is necessary for its purposes, sub-

106   UNITED STATES ex rel. RILEY v. BALTIMORE & O. R. CO.

Statement of the Case.                    [27 App.

ject to the authority resting in the courts to restrain abuse of the power in that respect.

2. Private property cannot be taken for public use unless there is a necessity for such taking, for the taking of property when not at all necessary for a public purpose, or the taking of more property than is necessary for a given public purpose, is, in effect, a taking for private use.

3. A property owner whose land, although within the boundaries of the land authorized by the act of Congress of February 28th, 1903 (32 Stat. at L. 909, chap. 856), to be taken through condemnation proceedings by the Baltimore & Ohio Railroad Company, for freight terminal facilities, is not within the location for such facilities fixed upon by the railroad company and approved by the District Commissioners, cannot, under section 9 of that act, compel the company to institute and prosecute proceedings for the condemnation of her land,—especially where it appears that the land would be useless for the company's purposes.   (Distinguishing Dana v. Rock Creek R. Co. 7 App. D. C. 482.)

No. 1556.   Submitted November 9, 1905.   Decided March 6, 1906.

4. Quære, Whether mandamus is the appropriate remedy to compel a railroad company to institute and prosecute proceedings to condemn land belonging to the relators.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia overruling a demurrer by the petitioner to the answer of the respondent in a habeas corpus proceeding, and dismissing the petition.    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from the order overruling the demurrer to the answer of the Baltimore & Ohio Railroad Company, the appellee, and dismissing the petition of the relator, Emilie C. Riley, the appellant, for a writ of mandamus.

The appellant filed her petition in the court below against the appellee, asking for a writ of mandamus to compel the appellee to institute and prosecute proceedings for the condemnation of certain lots in Eckington, within the area bounded by New York avenue, Florida avenue, Eckington place, and R. street, of which lots she is the owner.

The appellant alleges that by the act of February 28, 1903 (32 Stat. at L. 909, chap. 856), the appellee was authorized and

empowered to acquire, by purchase or condemnation, all the land within the boundaries mentioned, for freight terminal purposes; that it was provided in said act that any property owner whose land was included within said boundaries should have the right, within two years of the date of the act, to institute proceedings to compel the appropriation of said land by the appellee; that the appellee had acquired all the land embraced within such boundaries, except a small portion thereof fronting on R street, and in this portion was the land of the petitioner, but the appellee had refused to purchase or condemn the property of the petitioner.

The appellee answered denying any legal right in the petitioner to the writ of mandamus, admitting that, under the act to provide for a union railroad station, the act of Congress before mentioned, the appellee was authorized to locate a freight yard and terminal in Eckington upon the land within the boundaries before mentioned; that, under the plans agreed upon between the appellee and the District of Columbia, the appellee will not occupy any of said property north of the south line of Quincy street, and will not be within a square of the appellant's property; that the petitioner's property fronts on R street, and R street, under the acts of Congress referred to, is not to be and cannot be closed; that the access of the petitioner to her property, with R street and the alley in the rear open and to remain open, is not and will not be affected; that her property is not so situated as to give her the right to institute proceedings to compel the appellee to acquire her property, and these are not the proceedings contemplated by the union-station act; that the appellee had the right to locate within the area described, but was not compelled to occupy the entire area, and it has exercised its right to occupy a part only, and the lines of its occupation are definitely fixed by an agreement between the appellee and the Commissioners of the District, by the adoption of plans presented by the appellee and approved by the Commissioners.

The appellant demurred to this answer, and her demurrer was overruled, and the court passed an order discharging the rule

108  UNITED STATES ex rel. RILEY v. BALTIMORE & O. R. CO.

Opinion of the Court.                    [27 App.

and dismissing the petition, and from this decision the appellant appeals to this court.

*Mr. C. A. Douglass* and *Mr. E. B. Sherrill* for the appellant.

*Mr. G. E. Hamilton, Mr. Henry R. Gower,* and *Mr. M. J. Colbert* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

Congress, by two acts approved February 12, 1901, legislated respecting the steam railroad problem at the capital; one of these acts provided for eliminating grade crossings of the Baltimore & Potomac Railroad, and required that company to depress its tracks in some places and to elevate them in others, and to provide a better station building; the other of these acts provided for the elimination of certain grade crossings and required and authorized the construction of new terminals and tracks, and for the erection of a new passenger depot at an appropriate place. The act of February 28, 1903 (32 Stat. at L. 909, chap. 856), greatly improved the original project, and provided for a union railroad station, and marked within definite outlines southward and northward the lines of each railway to the union station, the location of terminal and freight yards, and in the statute broadly and clearly provided for the accomplishment of its object.

Section 4 of the last-mentioned act provided for the location of the freight traffic of the appellee:

"Sec. 4. That, in order to provide terminal facilities for the freight traffic of the Baltimore & Ohio Railroad Company in lieu of those which said company is now authorized to have within the area to be occupied by the passenger station and terminal, described in the act relating to it, approved February 12, 1901, the said Baltimore & Ohio Railroad Company be, and it is hereby, authorized and empowered (in addition to the power and authority conferred upon it by the provisions of said act relating to it, approved February 12, 1901) to locate, construct,

UNITED STATES ex rel. RILEY v. BALTIMORE & O. R. CO. 109

D. C.]                    Opinion of the Court.

maintain, and operate tracks, switches, sheds, warehouses, other structures, and facilities necessary or proper for a freight-delivery yard and terminal in Eckington, in, over, and upon the bed of Quincy street and Third street between New York avenue and R street, and in and upon the property bounded by New York avenue, Florida avenue, Eckington place, and R street, outside the limits of the city of Washington; and also within the city of Washington in, over, and upon the bed of Second street between M and N streets and in and upon squares 711, 712, and 713; and also to extend its tracks and switches north of V street on the east side of the main tracks of its Metropolitan Branch Railroad to Rhode Island avenue extended; and said company is hereby authorized to acquire, by purchase or condemnation, as provided in this act, the lands and property necessary for the additional freight facilities above mentioned."

We observe this section authorizes and empowers the appellee *to locate* its instrumentalities for a freight delivery yard and terminal in and upon property bounded in section 4, and to acquire by purchase or condemnation, as provided in this act, *"the lands and property necessary for the additional freight facilities."* The section authorizes and empowers the appellee to locate its freight yard in and upon a described area. It does not direct the appellee to acquire by purchase or condemnation all the land within the prescribed area; it does authorize the appellee to acquire by purchase or condemnation *"the lands and property necessary for the additional freight facilities."*

Section 7 requires "that, before any portion of the work of construction within the District of Columbia herein described shall be begun, plans thereof in accordance with the provisions of this act shall be prepared by the company undertaking such work, and shall be submitted for approval to the Commissioners of the District." So far as the plans affect parks and reservations, they shall be submitted to the Secretary of War for approval, and, so far as underground construction is involved, the plans shall be submitted for approval to the superintendent of the Library of Congress. Duly authenticated copies of such plans shall, after approval, be filed with the Commissioners of the District and all work done in accordance therewith.

110  UNITED STATES ex rel. RILEY v. BALTIMORE & O. R. CO.

Opinion of the Court.                    [27 App.

By plans and work of construction we understand the plans for the union station, for viaducts, for tracks raised or depressed, for the location of all tracks, the line of the railways northward and southward, and the width of the strip of land to be taken therefor, the plans for the buildings, and the location of freight yards and terminals, including the lands and property necessary for the same. When such plans were submitted and approved by the Commissioners the property and lands to be taken were definitely, more definitely fixed than in the act itself, and finally determined.

The relevant part of section 9 is as follows:

"Sec. 9. That in the execution of the powers conferred by this act, or by either of said before-mentioned acts approved February 12, 1901, by the terminal company, the Philadelphia, Baltimore, & Washington Railroad Company, or the Baltimore & Ohio Railroad Company, each of said companies may acquire, by purchase or condemnation, the lands and property necessary for all and every the purposes contemplated by each of said last-mentioned acts and this act respectively; and such condemnation shall be effected in the manner and by the methods and processes provided by sections 648 to 663, both inclusive, of the Revised Statutes relating to the District of Columbia, which said sections, despite any repeal thereof, are hereby continued in full force and effect, and, for the purposes contemplated by this section, are hereby specially enacted, with like effect as if the same were incorporated herein at length; *Provided,* That in every case wherein an assessment of damages or an award shall have been returned by the appraisers the company, upon paying into court the amount so assessed or awarded, may enter upon and take possession of the land and property covered thereby, irrespective of whether exceptions to said assessment or award shall be filed or not, and the subsequent proceeding shall not interfere with or affect such possession, but shall only affect the amount of compensation to be paid: *And provided further,* That any property owner whose land is included within such location shall have the right, within two years, to begin proceedings to compel the appropriation of said land by said com-

pany and the payment of damages in the same manner as if the proceedings had been instituted by the company under the provisions of this act."

In our opinion, by this section the appellee "may acquire by purchase or condemnation the *lands and property necessary for* all and every *the purposes* contemplated by each of said last-mentioned acts and this act respectively," and when the lands and property necessary to be taken by the appellee for the purposes of these acts shall have been determined and submitted to and approved by the Commissioners of the District, then the location of the freight yard and terminal is clearly and finally fixed. Then any property owner whose land is included within *such location* shall have the right within two years to begin proceedings to compel the appropriation of said land by the appellee, as stated in the second proviso to section 9.

"When authority to take property for public use has been conferred by the legislature, it rests with the grantee to determine whether it shall be exercised, and when and to what extent it shall be exercised, provided * * * that the power is not exceeded or abused." 2 Lewis, Em. Dom. 2d ed. § 239, p. 566.

The time when the work should be completed was limited to five years from the passage of this act by section 8 thereof.

In Illinois it was decided: "A corporation having such power must be permitted to judge for itself what amount of land is necessary for its purpose, subject to the authority resting in the courts to restrain any abuse of the power in that respect." *Schuster* v. *Sanitary District,* 177 Ill. 627, 52 N. E. 855.

In *Atlantic & B. R. Co.* v. *Penny,* 119 Ga. 482, 46 S. E. 665, the court said: "The exact quantity of land that may be necessary for the construction and maintenance of stations, terminal facilities, and the like cannot be definitely fixed, even by prescribing a maximum amount, as in case of the right of way; and therefore the general assembly has prescribed that the company may acquire as much 'as may be necessary' for this purpose."

The Illinois court says: The railroad "is empowered to locate its line in its discretion * * * and granted the power of eminent domain in acquiring its right of way. * * * There

112   UNITED STATES ex rel. RILEY v. BALTIMORE & O. R. CO.

Opinion of the Court.                          [27 App.

is of necessity lodged in railway companies, to be exercised through their officers, a large discretion to determine within the statutory and constitutional limitations, the amount of land reasonably necessary for its corporate purposes; and in *Smith* v. *Chicago & W. I. R. Co.* 105 Ill. 511, we said: 'Every company seeking to condemn land for public improvement must, in a modified degree, be permitted to judge for itself as to what amount is necessary for such purpose.' " *O'Hare* v. *Chicago, M. & N. R. Co.* 139 Ill. 151, 28 N. E. 923.

And so where the railroad was authorized to acquire such land as may be necessary, and the statute fixed a maximum limit of 6 rods for the roadbed, the court said whether the land taken was necessary was a matter to be determined by the company "within the limits of the right of way, 6 rods wide, as defined by the statute." *McKennon* v. *St. Louis, I. M. & S. R. Co.* 69 Ark. 108, 61 S. W. 383.

We think Congress in these railroad acts authorized the maximum, and the appellee was authorized to take the necessary land for freight facilities therefrom.

It appears by the appellee's answer that, under the plans submitted and approved, the appellee will not occupy any property in the prescribed area north of the south line of Quincy street, while the appellant's property fronts on the south side of R. street, which cannot be closed.

It is apparent from the map of the plan of the appellee's tracks and freight yard that it would be impracticable for the appellee's tracks, even by the use of a very high degree curve, to be located on the appellant's lots, and their situation is too remote from the business section to suggest locating freight houses on the appellant's lots. These lots appear absolutely useless for freight terminal purposes. The petition of the appellant does not suggest that the lots are in any manner necessary for the freight facilities of the appellee, for which Congress made provision, and merely insists that by force of the proviso the appellee must be compelled to condemn her property, although her property is not within the location finally adopted by the appellee and approved by the Commissioners of the District.

UNITED STATES ex rel. RILEY v. BALTIMORE & O. R. CO.  113

D. C.]                    Opinion of the Court.

When the power to exercise the right of eminent domain is delegated to a railway company, the courts will supervise the exercise of that power and restrain any clear case of abuse of the power.  Should the courts be asked to compel the railroad to condemn property for which it finds no public use, and when it is plain the property is not needed?  Can Congress require a railroad to condemn private property at some distance from its freight yard, which is in no sense necessary for the use of the railroad?

"Private property cannot be taken for public use, unless there is a necessity for such taking; for the taking of property when not at all necessary for a public purpose, or the taking of more property than is necessary for a given public purpose, is, in effect, a taking for private use.  Randolph, Em. Dom. sec. 185." *Atlantic & B. R. Co.* v. *Penny,* 119 Ga. 481, 46 S. E. 665.

"The adjudicated cases likewise establish the proposition that, while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made." *Shoemaker* v. *United States,* 147 U. S. 282, 298, 37 L. ed. 170, 184, 13 Sup. Ct. Rep. 361.

.  "It undoubtedly must  rest, as a general rule," says Chancellor Kent (2 Com. 340), "in the wisdom of the legislature to determine when public uses require the assumption of private property; but, if they should take for a purpose not of a public nature, as, if the legislature should take the property of A, and give it to B, or if they should vacate a grant of property, or of a franchise, under the pretext of some public use or service, such cases would be gross abuses of their discretion and fraudulent attacks upon private right, and the law would clearly be unconstitutional and void." *New Central Coal Co.* v. *George's Creek Coal & I. Co.* 37 Md. 560.

In our opinion, Congress, in these railroad acts here consid-

114  UNITED STATES ex rel. RILEY v. BALTIMORE & O. R. CO.

Opinion of the Court.                          [27 App.

ered, determined the general line northward and southward, the location of the union station and substations, the freight yards and terminals, and gave the railroads, required to finish their several undertakings within five years, prescribed areas within which the companies for the several works and constructions might acquire by purchase or condemnation sufficient land to effectuate the objects of Congress. The grant of the right of condemnation obviously was given within the maximum limits.

Congress was mindful of the prohibition that "private property was in no case to be taken for private use," and therefore, within the maximum area for the freight yard and terminal of the appellee, it enacted that the appellee "may acquire by purchase or condemnation the *land and property necessary for all the purposes contemplated.*"

We repeat, that the plans perfected and then submitted to the Commissioners of the District and approved by them, determined finally the limits of the land and property necessary to be taken by the appellee within the maximum limits wherein the appellee was to locate, and whereon it did locate, its freight yard and terminals. The second proviso of section 9 of the union station act is only for the benefit of a property owner whose land is included *"within such location,"* and the compulsion upon the appellee to appropriate land within two years is granted to such property owner alone.

If we now held that the appellant could invoke the power of this proviso to compel the railroad to acquire the appellant's private property, not necessary for any public use whatever, we would sanction an abuse of the power of eminent domain. If the appellant now desired to restrain the appellee from condemning her lots, we should in a proper way, forbid the appellee from such taking of private property for private use under the supposed sanction of this act of Congress.

In this instance, it is true, the appellant is willing the railroad should acquire her lots, but the process should be by purchase, and not by condemnation. If, in such a case, she should be unwilling, should we not protect her property from condemnation when it was so plain that her lots were not necessary in any

manner for any public use by the appellee, and should we not, for the same reason, prevent her from compelling the appellee to condemn her lots after the appellee has located its freight yard and terminal, and it happens that the lots of the appellant are not within such location?

We are not now speaking of a case of an adjacent property owner, nor considering that qualification of the right of eminent domain that compensation should be made for private property taken or sacrificed for public use, as in *Pumpelly* v. *Green Bay & M. Canal Co.* 13 Wall. 166, 20 L. ed. 557, or as in *Dana* v. *Rock Creek R. Co.* 7 App. D. C. 482.

If propinquity of freight yards and freight trains should so seriously injure the enjoyment of the appellant's lots and houses hereafter, she would, in a proper case, have the same remedy, at law or in equity, that others nearby could resort to. Such annoyance, however, common to the appellant and to the neighborhood, is not such a sacrifice of private property for public use as comes within the cases last stated.

In conclusion, the appellant has no right to compel the appellee to appropriate her land, and it becomes unnecessary to discuss whether mandamus would be an appropriate remedy in a case such as this. We decide the appellant has no right, and therefore has no remedy.

The order of the learned court below, overruling the demurrer and dismissing the petition of the relator, is affirmed with costs.

*Affirmed.*