# CHARLESTON.

A. J. Mullens *v.* The Virginian Railway Company

(No. 6154)

Submitted April 17, 1928.     Decided April 24, 1928.

Railroads—*Deed Conveying Right of Way and Land Necessary for Changing Channels of Streams Held Not to Require Railroad to Change Stream's Channel.*

A deed to a railroad company conveys a definitely described strip of land for a right of way. It also grants such additional land adjoining the strip as may be necessary for the slopes of cuts and fills and for changing the channels of streams.    Held: the grant of additional land is for the benefit of the company, to be operative only if necessary for the construction and protection of its roadbed, and imposes no contractual obligation upon the company to change the channel of a stream merely for the benefit of the grantor.

(Railroads, 33 Cyc. p. 173.)

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Wyoming County.

Action by A. J. Mullens against the Virginian Railway Company. Judgment for plaintiff, and defendant brings error.

*Reversed and dismissed.*

*Williams, Lovall & Taylor, M. P. Howard, Hall & Buford,* and *Martin & Wingfield,* for plaintiff in error.

*J. Albert Toler,* for defendant in error.

HATCHER, JUDGE:

In 1906 the Deepwater Railway Company completed a railroad through the land of the plaintiff. A section of the roadbed was constructed in the channel of a sprawling mountain creek, narrowing the stream to about half its former width. The defendant purchased the property of the Deepwater Company in 1907, assuming its contracts and liabilities. Unusual floods occurred in 1918 and 1919, which caused the stream to overflow its bank opposite the railroad embankment and cut a new channel through a portion of plaintiff's land. This is an action in assumpsit to recover damages caused by the diversion of the stream. Upon a demurrer to the evidence, the plaintiff obtained a verdict and judgment in his favor in the court below.

The right of way through plaintiff's land was acquired in 1904 by a deed which conveyed to the railway company a definitely described strip of land sixty-six feet wide together with such additional land on either side of the strip as, in the language of the deed, might "be necessary for the slopes of cuts and fills and for changing the channel of the stream, such extra widths to be taken and used so as to not unnecessarily damage the residue of the land of the party of the first part."

The plaintiff bases this case on the theory that the conditional grant to the company of "extra widths" in the deed of 1904 constituted or implied a covenant on the part of the grantee to use such widths as it constructed its road, for the purpose of changing or enlarging the channel of the stream, in order to prevent injury to the residue of his land. The proof shows that during the construction of the road a blast

threw some rock into the channel of the stream; that the plaintiff at once requested the contractors to remove the stone, but they removed only part of it; that the portion remaining (and not the roadbed) caused the water to overflow on plaintiff's land whenever freshets came, but no material injury was done until the years 1918 and 1919; and that the place in the channel obstructed by the rock is within the sixty-six foot strip conveyed to the company.

The grant in excess of the sixty-six foot strip was clearly for the use of the company in constructing and protecting the roadbed. The company was vested with discretion to determine in the first instance the necessity of using such excess. *Atlantic Ry. Co.* v. *Pening,* 119 Ga. 479. The record discloses no demand from the plaintiff that the creek channel be changed or enlarged to protect his land. In fact there is nothing in the record to show that such a change or enlargement was either necessary or essential for that purpose. His testimony attributes the overflow to the obstruction of the stream resulting from the blasting rather than to the narrowing of the stream by the embankment. The deed contains no covenant whatsoever which relates to injury to the residue of plaintiff's land, except *in the manner of taking the extra widths.* If the proper construction of the roadbed required the use of additional land, the excess was to be taken in such manner as "to not unnecessarily damage the residue." It was not to be taken *merely* to prevent damage to the residue. As no extra widths were taken, that covenant did not become operative. This is the only rational interpretation which the clause as to additional land will bear. It is quite evidently the one given it by the plaintiff prior to this action. In 1920, he wrote to an official of the defendant informing him of the damage to his property. The letter is in part as follows:

"Now I do not ask that the company pay me damages, but I think it only fair and reasonable that I should ask that the company build a protecting wall along the creek to prevent further loss. I would like to have you come and look over the proposition with me. I am sure that we can come to some agreement. As my relations with the com-

pany has always been very agreeable, to the extent
that I, gave them the right of way through my
property.''     •

At the date of this letter it is apparent that the plaintiff
had in mind no necessity of changing or enlarging the channel
nor any covenant or agreement obligatory on the defendant
to do so.  His modest request then was only for a ''protecting
wall.''  In 1921 he instituted an action of trespass on the
case against the defendant for damages for injuries to his
land resulting from the diversion of the creek, which he pros-
ecuted to judgment.  The judgment was set aside, but the
point is that he then charged the defendant with a tort and
not the breach of a contract.  In 1926 he instituted another
tort action for damages occurring from such diversions after
1921.  That suit has not been tried, but together with the
action of 1921 is still pending.  The present suit was also in-
stituted in 1926.  Plaintiff does not excuse his acts on the
ground of ignorance.  He says it was his understanding in
1904, when the deed was written, that it was to obligate the
railroad company to enlarge the creek channel.  But is it
reasonable that he would have permitted the completion of
the railroad and its operation for so many years during all
of which time his land was subject to floods, without at least
a demand that the company comply with such covenant?  The
position he now assumes is inconsistent with his conduct
throughout the twenty years prior to this suit.  Even if the
deed were ambiguous, the practical construction given it by
the plaintiff denies his present claim.

We are not to be understood as holding that plaintiff has
no right of action against the defendant.  We merely adjudge
that he has none under the deed of 1904 upon which this ac-
tion is predicated.  We say nothing as to his rights in the
pending tort actions.

Finding the law on the demurrer to the evidence to be
for the defendant, we reverse the judgment of the lower court
and dismiss the case.

*Reversed and dismissed.*