## WINSLOW *v.* BALTIMORE & OHIO RAILROAD COMPANY.

---

No. 1570.   Submitted June 6, 1906.   Decided June 13, 1906.

EMINENT DOMAIN; GRADE CROSSINGS; UNION STATION IN THE DISTRICT.

OF COLUMBIA; CONDEMNATION PROCEEDINGS; COURTS; APPELLATE JU-
RISDICTION; STREETS AND HIGHWAYS; ESTOPPEL; RAILROADS.

1. The right of a railroad company to condemn land for the relocation of a
   highway crossed by its tracks, given by secs. 646, 647, D. C. Rev.
   Stat., is not taken away by the acts of Congress relating to the
   elimination of grade crossings and providing for a  union station in
   this District (31 Stat. at L. 767, chap. 353; 31 Stat. at L. 775, chap.
   354; and 32 Stat. at L. 909, chap. 856).

2. In proceedings by a railroad company to condemn land for railroad
   purposes under the several acts of Congress relating to the elimination
   of grade crossings, and providing for a union station in this
   District (31 Stat. at L. 767, chap. 353; 31 Stat. at L. 775, chap. 354;
   and 32 Stat. at L. 909, chap. 856), by the terms  of which a special
   appeal is given to the supreme court of the District of Columbia, this
   court has the power to review the final order of that court, sitting as
   a district court of the United States, confirming the award of the
   appraisers;  such appeal being within the general appellate juris-
   diction conferred upon this court by sec. 226, Code D. C. (31 Stat.
   at L. 1225, chap. 854.)

3. *Quære*, whether a property owner who is satisfied with the amount of
   the award for a portion of a tract of land owned by him, taken in
   condemnation proceedings by a railroad company, but who desires to
   raise the question whether the company is not compelled to take all,
   and not part, of the tract, may disregard the method prescribed by
   secs. 650, 654, D. C. Rev. Stat., for reviewing in the lower court the
   award of the appraisers, and take an appeal to this court from the
   order of that court ratifying and confirming the award.

4. Where, in proceedings by a railroad company to condemn land for
   railroad purposes, and allowing it to relocate streets crossed by its
   tracks, a property owner whose land is taken accepts the award of
   the appraisers, he is estopped to appeal from the decree ratifying such
   award, or at least from appealing in respect to the land taken and
   the legality of such taking.

5. A property owner cannot, in a condemnation proceeding, properly urge
   that a railroad company should have condemned the whole of his
   tract of land, instead of only a portion of it, on an appeal from so
   much of the decree confirming the award of the appraisers "as fails
   to require the petitioner to acquire the entire tract," where the pro-
   ceedings were to acquire a part only.

6. The provisions of sec. 5 of the act of Congress of February 28, 1903 (32
   Stat. at L. 912, chap. 856), and of sec. 1 of the act of Congress of Feb-
   ruary 12, 1901 (32 Stat. at L. 775, chap. 354), that no street or
   avenue shall be closed until the railroad companies mentioned therein
   shall acquire all abutting property, so that no property owner shall

be deprived of egress from or ingress to his property, do not apply to country roads and compel the railroad companies to acquire farms on both sides of such a road.

7. A railroad company will not be required by the court in condemnation proceedings to take property for which it finds no public use and where it is plain that the property is not needed. (Following *United States ex rel. Riley* v. *Baltimore & O. R. R. Co.* 27 D. C. 105.)

HEARING on an appeal by property owners from a judgment of the Supreme Court of the District of Columbia, sitting as a District Court of the United States, in a proceeding by a railroad company to condemn land for railroad purposes, and on a motion to dismiss the appeal. *Motion to dismiss overruled, and judgment affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Wm. G. Johnson* for the appellants.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the appellee.

Mr. Justice McCOMAS delivered the opinion of the Court:

This case has had careful consideration, upon a motion to dismiss the appeal upon its merits, and again upon a motion for a rehearing. This is an appeal from a final order of the supreme court of the District of Columbia, holding a district court of the United States, in a proceeding in condemnation instituted in that court by the Baltimore & Ohio Railroad Company, the appellee, the instrument of appropriation filed in said district court having for its object the acquisition, by condemnation, to its use, of a part of a tract of land in the District of Columbia, called Youngsborough, known as the Patterson estate, belonging to Francis Winslow and others, appellants.

The commissioners, in their report, awarded the appellants $45,392.50, appraising the value of the strip of land sought to be acquired by the appellee at $35,392.50, and awarding $10,-

000 for the injury and damage to the remaining part of the Patterson tract. The part of the Patterson tract taken by the appellee is .625 part of an acre, situated at the intersection of Florida avenue, Delaware avenue, and Brentwood road, and is the southeast corner of a farm containing about 90 acres. In addition to land described as a tract to be used for right-of-way purposes, a strip of land 50 feet wide, east of and immediately adjoining the land to be used for right-of-way purposes, and extending from the east line of the Brentwood road to the north line of Florida avenue, was taken, this last parcel to be used for relocating and straightening the Brentwood road.

The appellants resisted the proceedings on the ground that the appellee was compellable, under the law, to take the entire tract, and could not limit the proceedings to the taking of the portion described in the instrument of appropriation. The appellee paid into the registry of the court the full amount awarded by the appraisers. The award of the appraisers was confirmed by a final order of the court below, and on April 20th, 1905, on the appellants' motion, said court ordered the clerk to pay over to the appellants the sum of $35,392.50, the amount awarded for the land taken. The remaining $10,000, at the instance of appellants, was invested to abide the further order of the court.

1. On April 27th, 1905, the appellants noted an appeal to this court, "from so much of the decree of April 20th, 1905, confirming the return and award of the appraisers herein, as fails to require the petitioner, the Baltimore & Ohio Railroad Company, to acquire the entire tract of land described in the answer of the respondents herein, and as permits the said petitioner to limit its acquisition to the portion of the said land described in the petition or instrument of appropriation."

The appellee filed a motion to dismiss this appeal. For convenience, this motion and the case made by the record were heard together.

Three reasons are urged for dismissing the appeal: (1) That the appellants did not file, within ten days after the award, written exceptions thereto, nor at any time file exceptions to said

award; (2) that no appeal to this court was provided for in the act of Congress under which these proceedings were instituted; (3) that, by accepting the sum of $35,392.50, part of the award, the appellants lost their right to appeal, if they had any.

"An Act to Provide for a Union Railroad Station in the District of Columbia, and for Other Purposes," approved February 28th, 1903 (32 Stat. at L. 909, chap. 856), supplemented two acts of Congress approved February 12th, 1901; the one, "An Act to Provide for Eliminating Certain Grade Crossings of Railroads in the District of Columbia, and to Require and Authorize the Construction of New Terminals and Tracks for the Baltimore & Ohio Railroad Company in the City of Washington, and for Other Purposes" (31 Stat. at L. 775, chap. 354); the other, "An Act to Provide for Eliminating Certain Grade Crossings on the Line of the Baltimore & Potomac Railroad Company in the City of Washington, District of Columbia, and Requiring Said Company to Depress and Elevate Its Tracks, and to Enable It to Relocate Parts of Its Railroad Therein, and for Other Purposes" (31 Stat. at L. 767, chap. 353).

The two earlier acts intended to eliminate grade crossings in the Capital, and to secure in the one case a better railway station, and in the other a better location of a new and better railway station. The latest act wisely supplemented this purpose by requiring the two roads to construct and maintain an adequate union railroad station at a convenient location fixed by the act, the station to be a joint construction; and Congress also provided for the creation of a terminal company in aid of this extensive project for improving the Capital, fixed the routes of connection of the two railroads, the location of freight yards to subserve the public interests, required certain forms of construction, and, in aid of the broad and comprehensive plan, directed that streets and avenues be closed and that others be opened, and exercised its sovereign powers over the Federal District to grant rights of way and a spacious location of a union station and of yards, and utilized the modes of condemna-

tion of lands and of opening and closing streets heretofore given by it to the municipal government of the District of Columbia.

In section 9 of the act of February 28th, 1903, Congress provided:

"Sec. 9.   That, in the execution of the powers conferred by this act, or by either of said before-mentioned acts, approved February 12th, 1901, by the terminal company, the Philadelphia, Baltimore, & Washington Railroad Company, or the Baltimore & Ohio Railroad Company, each of said companies may acquire, by purchase or condemnation, the lands and property necessary for all and every the purposes contemplated by each of said last-mentioned acts and this act respectively; and such condemnation shall be effected in the manner and by the methods and processes provided by sections 648 to 663 both inclusive, of the Revised Statutes relating to the District of Columbia, which said sections, despite any repeal thereof, are hereby continued in full force and effect, and, for the purposes contemplated by this section, are hereby specially enacted with like effect as if the same were incorporated herein at length: *Provided,* That in every case wherein an assessment of damages, or an award, shall have been returned by the appraisers, the company, upon paying into court the amount so assessed or awarded, may enter upon and take possession of the land and property covered thereby, irrespective of whether exceptions to said assessment or award shall be filed or not, and the subsequent proceeding shall not interfere with or affect such possession, but shall only affect the amount of compensation to be paid."

The section just quoted, for such condemnations, re-enacts sections 648 to 663, both inclusive, of the Revised Statutes of the District of Columbia.   But section 10 of the act of February 12th, 1901 (Public, No. 50) provides:

"Sec. 10.   That if, for the purpose of constructing and owning the terminals, viaduct, railroads, depots, stations, and other works authorized by this act, or any part thereof, the Baltimore & Ohio Railroad Company shall deem it expedient or advisable

that a terminal company in its interest be created and organized in the District of Columbia, the said Baltimore & Ohio Railroad Company, or some person thereto authorized on its behalf by resolution of its president and directors, together with other persons not less than seven in number, of whom a majority shall be residents of the District of Columbia, shall cause a certificate of incorporation to be executed and recorded in accordance with the provisions of the general incorporation act of Congress for the District of Columbia relating to railroad companies, being sections 618 to 676, both inclusive, of the Revised Statutes relating to the District of Columbia, with such capital stock, not to exceed $5,000,000 fully paid up, and under such corporate name as may be set forth in such certificate. The corporation so formed shall be vested with all the authority, rights, and privileges granted by said general act.    *    *    *
Said corporation shall also be vested with and enjoy all the authorities, rights, and privileges herein granted, so far as the same are applicable to, or exercisable in, its undertaking, as set forth in its said certificate of incorporation; and it shall be bound by all the limitations and provisions of this act." [31 Stat. at L. 779, chap. 354.]

Section 8 of the act of February 28th, 1903, enacts that, "except as modified by this act, all the provisions of said act relating to the Baltimore & Ohio Railroad Company, approved February 12th, 1901, shall be and remain in full force and effect." The appellants insisted that, because section 9 of the act of February 28th, 1903, provides the power and manner of condemnation for the terminal company and for each of the railroad companies, or by one acting for all, the railroad companies derived no right or authority, under sections 646 and 647 of the Revised Statutes, District of Columbia. There was no terminal company, and the appellee was therefore, by section 10 of the act of February 12th, 1901, given the aid of D. C. Rev. Stat. secs. 618 to 676, both inclusive. In our opinion, the appellee has, therefore, such right and authority under sections 646 and 647, given it in section 10 of the said act of 1901. We observe, also, that section 11 of the act of 1901, and

section 9 of the act of 1903, contain like provisions for the acquisition and condemnation of lands, and like inclusion of said sections 648 to 663, both inclusive, of the Revised Statutes of the District.   If this condemnation had proceeded under the act of 1901, these companies unquestionably would have had the rights and authority contained in sections 646 and 647, and in the present proceeding, from the matters before stated, we repeat, the appellee was given such rights and authority as are contained in the two last-mentioned sections of said Revised Statutes.

Section 646 empowers a railroad whose tracks shall cross a highway, where an embankment shall make a change in the line of such highway, to take additional lands for the construction of such highway; and section 647 provides for the condemnation of such additional land, and that the same shall become part of such highway and held for highway purposes.   Accordingly, in the proceeding of condemnation we are here considering a triangular piece of land was taken, part for the railway and part to relocate and straighten Brentwood road from New York avenue to Florida avenue, thus affording a roadway 50 feet wide.   The instrument of appropriation asked for the acquisition by condemnation of this triangular piece of land, .625 of an acre, being the corner of the Patterson farm bounded by Brentwood road and Florida avenue.   The total award of the commissioners, by their report filed November 21st, 1904, was, as we have said, $45,392.50, all of which was the appraised value of this land, except $10,000, which was awarded as damages to the rest of the Patterson farm.   The appellants filed no exception to such award, which was confirmed April 20th, 1905, and on April 27th, 1905, the appellants filed their notice of appeal to this court.

2. By sections 650 and 654, D. C. Rev. Stat., made part of the act of February 28th, 1903, such condemnation proceedings were to be taken and carried on in the supreme court of the District, and the only appeal from the commissioner's award in condemnation provided is in section 658, D. C. Rev. Stat.:

"Sec. 658. The award of the arbitrators may be reviewed by

the court, in which such proceedings may be had, on written exceptions filed by either party, in the clerk's office, within ten days after the filing of such award; and the court shall take such order therein as right and justice may require, by ordering a new appraisement, on good cause shown."

Section 659 provides that "the subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed." The first proviso to section 9 of the union station act states that the company, after paying into court the money awarded, may take possession of the land covered thereby, and the subsequent proceedings "shall only affect the amount of compensation to be paid."

Thus Congress, in these successive railroad and union station acts, provided for the condemnation of land, and, for a special appeal from the award of the appraisers, Congress confined the proceedings to the supreme court of the District, and limited the appeal for review in this case to the same court in which these proceedings were had; and Congress further limited the scope of the appeal, so that the subsequent proceedings on the appeal should only affect the amount of compensation.

In proceedings for condemnation of lands for public use, the proceedings are either carried on under the supervision of a court of general jurisdiction, or usually an appeal is provided to such a court. The courts of many States hold that there can be no appeal unless granted by statute. In this case, the sections 658 and 659, D. C. Rev. Stat., just quoted, grant the only appeal afforded by these acts of Congress.

The appellants here did not file any written exceptions within ten days, because the appeal would only affect the amount of compensation, and the appellants were satisfied with the compensation for the land taken, and the appellants' object was, upon the appeal, to raise the question of the obligation of the appellee to condemn land not taken. The appellants insist that, if the judgment of the court in this case upon a question of law submitted to it for a decision can be reviewed at all, it must be by appeal to this court from the judgment complained of under its general jurisdiction, and not by appeal to the court below

by exceptions to the amount of the award of the appraisers, which is not here complained of. The appellants admit that there is no provision in the relevant act of February 12th, 1901 (31 Stat. at L. 780, chap. 354), but insist that section 11 of that act authorizes and empowers the appellee to acquire lands "by condemnation as provided in sections 648 to 663, both inclusive, of the Revised Statutes relating to the District of Columbia," and that section 11 contemplates a judicial proceeding in the supreme court of the District of Columbia; and, under existing laws, any final judgment of the supreme court of the District was subject to be reviewed on appeal to this court.

The appellants insist that the Code of this District provides for special terms of the supreme court of the District of Columbia, and for special terms of the district court of the United States, and confers on the latter court jurisdiction of all proceedings instituted in the exercise of the right of eminent domain; and that, by section 226 of the Code [31 Stat. at L. 1225, chap. 854], "any party aggrieved by any final order, judgment, or decree of the supreme court of the District of Columbia, or of any justice thereof * * * may appeal therefrom to the said court of appeals." The jurisdiction of the special term of the supreme court of this District holding a district court of the United States was invoked and exercised in this case, and the final order or decree here appealed from was passed. The appellant contends that the words of section 226, conferring appellate jurisdiction on this court, are ample to include this appeal from this final order or decree in a proceeding for the condemnation of land.

The two acts of 1901, and the act of 1903, last mentioned, are not intended to disturb the existing judicial system of this District, nor the jurisdiction of this court to review an order, judgment, or decree of the supreme court of this District as heretofore.

The summary proceedings for the condemnation of land are statutory exercises of the power of eminent domain in cases where the ordinary processes of law would seem to be inade-

quate, and even inappropriate; and, where such a statute gives a limited appeal by a special mode, it would apparently negative the right to appeal in any other manner. The court below had the power and jurisdiction to affirm the award in this case. It would appear the intent of Congress is that such action should not be reviewed in this court, and that, if the judgment of the court below was rendered within the limits of the special jurisdiction conferred upon it, it was not only binding, but final.

Very many of the courts of last resort in the States where the right of appeal from the lower court is given in terms substantially the same as is given in section 226 of the Code of this District hold that, such railroad companies having the authority to condemn, and the lower court, usually the circuit court, having exclusive and final jurisdiction over the subject-matter, the appellate court has no jurisdiction to review any of the questions presented by the record because the judgment of the court below is conclusive and its control exclusive; and then, when its determination is made, the whole matter is finally concluded. That the jurisdiction conferred upon the lower court in these cases is a special statutory one, and, in respect of all matters within the scope of the jurisdiction, its judgment is final and conclusive. That by such statutes there is no appeal expressly given to the appellate court, such statutes usually investing the lower court with the power of reviewing and confirming, or setting aside, inquisitions like the present. That, from the nature and course of their proceeding, this power of review is a fit subject for litigation in a circuit court, but is wholly inappropriate to the jurisdiction of an appellate court. Among such cases, see *Moores* v. *Bel-Air Water & Light Co.* 79 Md. 397, 29 Atl. 1033; *Brown* v. *Philadelphia, W. & B. R. Co.* 58 Md. 544; *Wilmington & S. R. Co.* v. *Condon,* 8 Gill & J. 443; *Chappell* v. *Edmondson Ave. C. & E. City Electric R. Co.* 83 Md. 513, 35 Atl. 19; *Re Delaware & H. Canal Co.* 69 N. Y. 211; *Re New York, W. S. & B. R. Co.* 94 N. Y. 290; *Re New York & H. R. Co.* 98 N. Y. 12.

We have carefully examined the question of the right of ap-

peal, and overrule the motion to dismiss this appeal upon the authority of the cases to which we now refer.    In *Baltimore & P. R. Co.* v. *Sixth Presby. Church,* 19 Wall. 62, 22 L. ed. 97, where, not the railroad company, but the church, instituted proceedings before the marshal and a jury of this District against the railroad company to recover from it damages which the church had sustained by reason of the road of the company having been run through a street in front of the church, the jury assessed the damages, and the supreme court of this District confirmed the inquisition, and a judgment was rendered that the church recover the sum named, with costs.    By writ of error the railroad brought the case to the Supreme Court, and the church moved to dismiss it for want of jurisdiction, upon the grounds:  (1) That the proceeding is in its nature summary and special, and is of that character in which the action of the court confirming or quashing the verdict of the jury is conclusive and admits of no appeal; (2) that the proceeding in such case is governed, both before the jury and in the supreme court of the District, by a statute of Maryland which, by the uniform construction of the courts of that State, does not allow an appeal or writ of error to any other court; but the court said: "It is certainly true that the proceeding is of the character asserted in the proposition on which the want of jurisdiction is based, and that, as a general rule, no appeal or writ of error lies in this class of cases.  But the appellate jurisdiction of this court over the doings of the supreme court of the District is established and regulated by act of Congress, and a reference to the statutes on this subject is necessary to the decision of the question before us.    The act which created the supreme court of the District of Columbia vested in it the same powers and jurisdiction that had previously belonged to the circuit court, which it super- seded, and the appellate power of this court was declared to be the same as that which it had, by law, over the circuit court. The act of February 27th, 1801, organizing the circuit court, declares that any final judgment, order, or decree in said circuit court where the matter in dispute, exclusive of costs, shall exceed the value of $100, may be re-examined and reversed or affirmed

in the Supreme Court of the United States by writ of error or appeal, and, though the sum limiting this jurisdiction has been increased to $1,000, this statute remains the sole rule governing the right of appeal in all other respects. We are of opinion that both the questions raised by the motion to dismiss have been explicitly decided by this court. In the case of *Custiss* v. *Georgetown & A. Turnp. Co.* 6 Cranch, 233, 3 L. ed. 209, an assessment for land taken for use of the company was quashed by the circuit court, and a writ of error was sued out by Custiss from this court. A motion was made to dismiss this writ on the same ground taken in the present case, namely, want of jurisdiction; to which Marshall, Ch. J., replied, that 'at the opening of the case some doubt was entertained as to the jurisdiction of the Supreme Court; but that doubt is removed by an inspection of the act by which the circuit court of the District of Columbia is constituted. The words of that act, descriptive of the appellate jurisdiction of this court, are more ample than those employed in the judicial act.' He then quotes them as we have given them above. * * * But perhaps the most conclusive case in this branch of the discussion, namely, the proposition that the statute of Maryland governs the right of appeal in the present case, because by the act of Congress it is adopted as the mode of proceeding in assessing damages and in defining the power of the supreme court of the District in the matter, is that of *Carter* v. *Cutting,* 8 Cranch, 251, 3 L. ed. 553. That was a case in which, an order of the orphans' court of Alexandria county being affirmed in the circuit court, an appeal was taken to this court, and a motion was made to dismiss that appeal. This motion was based upon the 12th section of the same act of February 27th, 1801, by which it was declared that the circuit court, in appeals from the orphans' court, shall therein have all the power of the chancellor of the State of Maryland; and by the laws of Maryland the decree of the chancellor in such case was final. It will be observed that the analogy between that case and the present is perfect. But the court said in that case that the conclusiveness of the sentence formed no part of the essence of the powers of the court. Its powers to act are as

ample, independent of their final quality, as with it. And, referring to the language so often cited already, they say: 'We cannot admit that construction to be a sound one which seeks, by remote inferences, to withdraw a case from the general provisions of a statute which is clearly within its words and perfectly consistent with its intent.' We do not feel at liberty to disregard these contemporaneous expositions of an act of Congress which has furnished the criterion of our jurisdiction ever since the courts of the District were established, and they are so directly in point that we cannot dismiss the writ without overruling them. The motion is therefore denied."

In *Ormsby* v. *Webb,* 134 U. S. 47, 61, 33 L. ed. 805, 811, 10 Sup. Ct. Rep. 478, where the Supreme Court was discussing its jurisdiction to re-examine the final judgment or decree of the supreme court of this District, the court repeated the language of Chief Justice Marshall in the *Custiss Case,* and added: "In *Baltimore & P. R. Co.* v. *Sixth Presby. Church,* 19 Wall. 62, 22 L. ed. 97, the jurisdiction of this court to re-examine the final order of the supreme court of this District confirming an inquisition of damages returned therein, and which was instituted before the marshal and a jury of the District, was sustained. The court said that its power to review the judgments and final orders of the supreme court of the District was as ample as its power over the final judgments, orders, and decrees of the circuit court which it superseded. These two adjudications illustrate to some extent the nature of the cases from the courts of this District which may be re-examined here, and show that the question now before us is to be determined by the acts of Congress defining the relation between this court and the highest court of this District, and not by reference to the statutes of Maryland, or to the statutes defining our jurisdiction to review the judgments of the circuit courts of the United States, held in the several States. And we may repeat here what Chief Justice Marshall said in *Young* v. *Bank of Alexandria,* 4 Cranch, 384, 2 L. ed. 655, in which the main question was as to the power of this court to review the judgments of the circuit court of this District in a certain class of cases: 'The words

of the act of Congress, being as explicit as language can furnish, must comprehend every case not completely excepted from them.' "

In *Baltimore & P. R. Co.* v. *Sixth Presby. Church,* 91 U. S. 127, 23 L. ed. 260, the supreme court of the District had confirmed an inquisition of damages by a marshal's jury, and the railroad sued out a writ of error to the Supreme Court, which took jurisdiction and affirmed the supreme court of the District which had confirmed the inquisition of damages.

In *Kohl* v. *United States,* 91 U. S. 367, 375, 376, 23 L. ed. 449, 452, 453, the court said: "Doubtless Congress might have provided a mode of taking the land, and determining the compensation to be made, which would have been exclusive of all other modes.  They might have prescribed in what tribunal or by what agents the taking and the ascertainment of the just compensation should be accomplished.  The mode might have been by a commission, or it might have been referred expressly to the circuit court.  \*  \*  \*  The right of eminent domain always was a right at common law.  It was not a right in equity, nor was it even the creature of a statute.  The time of its exercise may have been prescribed by statute; but the right itself was superior to any statute.  That it was not enforced through the agency of a jury is immaterial; for many civil as well as criminal proceedings at common law were without a jury.  It is difficult, then, to see why a proceeding to take land in virtue of the government's eminent domain, and determining the compensation to be made for it, is not, within the meaning of the statute, a suit at common law, when initiated in a court."

It is to be observed that the court was here speaking of an act of Congress under authority of which a suit for condemnation of land for a United States courthouse in Cincinnati had been instituted in the proper circuit court of the United States; and, under the laws of Ohio, it was regular to institute a joint proceeding against all the owners of lots proposed to be taken. See also *United States* v. *Jones,* 109 U. S. 513, 27 L. ed. 1015, 3 Sup. Ct. Rep. 346.

In *Chappell* v. *United States,* 160 U. S. 499, 513, 40 L. ed.

510, 515, 16 Sup. Ct. Rep. 397, the condemnation proceeding instituted and concluded in a court of the United States was, in substance and effect, an action at law.

In *Searl* v. *School Dist. No. 2,* 124 U. S. 197, 199, 31 L. ed. 415, 416, 8 Sup. Ct. Rep. 460, it was held that the proceeding authorized by the statute of Colorado for condemning land to public use for school purposes is a suit at law within the meaning of the Constitution and the acts of Congress conferring jurisdiction upon the courts of the United States, which may be removed into a circuit court of the United States from a State court.

In *Mississippi & R. River Boom Co.* v. *Patterson,* 98 U. S. 403, 406, 25 L. ed. 206, 207, where Patterson had appealed in a condemnation proceeding to the State district court in Minnesota, and then, as a citizen of Illinois, obtained the removal of the case to the circuit court of the United States, where it was tried, speaking of the right of eminent domain, the Supreme Court said: "But, notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance. If that inquiry take the form of a proceeding before the courts between parties,—the owners of the land on the one side, and the company seeking the appropriation on the other,—there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State.

"The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of those terms. But when it was transferred to the district court by appeal from the award of the commissioners, it took, under the statute of the State, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents."

See also *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 37 L. ed. 463, 13 Sup. Ct. Rep. 622, in which case of condemnation proceedings an appeal was taken as provided by the

statutes of Pennsylvania, which appeal gave the right to a trial *de novo* according to the course of the common law.

Without further discussion, we conclude that these rulings of the Supreme Court instruct us that such a proceeding as this, to take land by condemnation and determining the compensation to be made for it, is a suit at common law when initiated in a court; that the jurisdiction of the special term of the supreme court of this District holding a district court of the United States, passed the final order or decree here appealed from, and that this court has the power and duty to review such order on appeal under the general jurisdiction conferred by section 226 of the Code.*

3. In taking the present appeal it may be doubted whether the appellants may safely disregard the method prescribed by the statute for reviewing the award of the appraisers in the court below.    The conditions imposed by statute must be complied with in order to secure the benefit of the appeal. Lewis, Em. Dom. 2d ed. sec. 537.    Section 658, D. C. Rev. Stat., before quoted, requires that written exceptions should be filed within ten days after the filing of such award.    Appellants' counsel admit that no such exceptions were filed, and for the reason that, under the succeeding section 659, it is declared that "subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed," and the purpose of this appeal is not to disturb the amount of the appraisement for the land taken, but to determine the question of the obligation of the company as to the farm not taken.    We may assume, though we do not decide, that the appellants, intending to submit a question of law for the decision of this court, may omit this procedure required by law because they do not desire to except to the award of the appraisers upon a question of fact.    The important part of the order or decree here is the ratification of the appraisement and award.

4. The appellants' counsel correctly say that the only question to be determined is whether the Baltimore & Ohio Railroad

---

*See *Seufferle* v. *Macfarland, ante,* p. 98.—Reporter.

Company is compelled to acquire the entire Patterson tract of land as described in the answers of appellants, or whether it may limit its acquisition to a portion arbitrarily selected by itself. We observe that the latter alternative is the usual case of land condemnation. But the appellants' able counsel contends that the appellee is compelled to acquire the entire tract because (1) by the specific terms of the acts we here consider the portion of the Brentwood road upon which the land of the appellants abuts is required to be closed and vacated as a public road, and (2) by the specific terms of the statute it is made the duty of the railroad company, as a condition to the closing of the road, that it acquire all the property abutting on the road.

We have before quoted certain sections of these statutes whereunder the appellee in this proceeding procured the condemnation of the land, a part taken for the railroad and a part taken to straighten and widen Brentwood road where crossed by the railroad. It resulted that Brentwood road was not closed, and unless and until it was closed, even upon the appellants' theory, the railroad could not be compelled to acquire the Patterson farm.

We need not consider here whether Congress made it mandatory that the Brentwood road shall be vacated, abandoned by the public, and closed to its use. These appellants have accepted the $35,392.50 awarded as compensation for all the lands taken from them, including the lands whereby Brentwood road was deflected, straightened, widened, and continued in public use. The appellants are estopped in this proceeding from objecting in respect of the failure to close Brentwood road, or the land condemned by the appellee for relocating Brentwood road. By accepting the amount last mentioned, the appellants cannot thereafter appeal in respect of the land taken, nor of the use the appellee may make of it. The appellants, by their note of appeal to this court, have abandoned all questions save the one we stated. The appellants submitted to that part of the order of the court below concerning the land taken for the appellee's railway and for relocating the highway crossed by the railroad tracks, when they accepted the amount awarded for the

land which was taken, the fee to which is invested in the appellee by the order appealed from. The appellants contend that, while submitting to this part of the order, they have a right to appeal from another part, where a reversal of the part appealed from as appellants claim would not affect rights under the portion submitted to. It is true that in *Embry* v. *Palmer,* 107 U. S. 3, 27 L. ed. 346, 2 Sup. Ct. Rep. 25, it is said: "Without entering upon a discussion of the general question, it is sufficient for the present purpose to say that no waiver or release of errors, operating as a bar to the further prosecution of an appeal or writ of error, can be implied, except from conduct which is inconsistent with the claim of a right to reverse the judgment or decree, which it is sought to bring into review. If the release is not expressed, it can arise only upon the principle of an estoppel. The present is not such a case. The amount awarded, paid, and accepted constitutes no part of what is in controversy. Its acceptance by the plaintiff in error cannot be construed into an admission that the decree he seeks to reverse is not erroneous."

And in *Reynes* v. *Dumont,* 130 U. S. 354, 394, 32 L. ed. 934, 945, 9 Sup. Ct. Rep. 486, the court said: "We are asked to dispose of the case adversely to appellants upon the ground that they received the remaining bonds and money after the liens decreed in Fry's favor were satisfied, but such receipt does not oust the jurisdiction. The acceptance by appellants of what was confessedly theirs cannot be construed into an admission that the decree they seek to reverse was not erroneous."

And in *Gilfillan* v. *McKee,* 159 U. S. 303, 311, 40 L. ed. 161, 163, 16 Sup. Ct. Rep. 6, where McPherson claimed an interest in two funds, and was decreed an interest in one, but denied an interest in the other, and accepted that in his favor and appealed from that which was adverse, the court said: "While the acceptance of the whole or a part of a particular amount awarded to a defendant might, perhaps, operate to estop him from insisting upon an appeal, there were practically two decrees in this case, one applicable to the special fund, which, in the bill, the subsequent pleadings, and in the decree, had been

kept as a distinct and separate matter, a portion of which fund
was awarded to McPherson, and the other applicable to the
general fund in which McPherson had been denied any partici-
pation whatever.   Clearly his acceptance of a share in the
special fund did not operate as a waiver of his appeal from the
other part of the decree disposing of the general fund.   There
is nothing inconsistent in his action in accepting the amount
awarded to him from the special fund, and appealing from the
refusal of the court to award him the general fund."

The principle announced in these cases is clear.   The diffi-
culty arises in its application in this case.   The instrument of
appropriation, the basis of this proceeding, limits the acquisi-
tion to the specific parcel of land described therein, part for
right of way and part for relocating Brentwood road.   This
triangular piece of land is the subject-matter of the condemna-
tion proceeding.   The answer of the appellants introduced
other matters.   The report of the appraisers was confined to
the value of the land sought to be acquired by the appellee and
to the injury and damage to the remaining part of the whole
tract of land, and the final order appealed from ratified the ap-
praisement and award returned by the appraisers, which was
confined to the land described in the instrument of appropria-
tion for the said uses; and the court's order recited that the
appellee had paid into the registry of the court the sum of $45,-
392.50, the full amount of such appraisement and award; and
the court further decreed that the fee in the land described in
the petition and instrument of appropriation became vested in
the appellee.

It appears to us that this proceeding was entire, and not
separable; that the matter litigated was a single matter; that
the fund here was but one fund; and, in our opinion, the
acceptance of the money received by the appellants should be
held an estoppel upon their right of appeal.   At least it estops
appellants in this proceeding from appealing in respect of the
land taken and the legality of such taking both for right of way
and for relocating the highway crossed by the railway tracks.

5. The very terms of this appeal determine us to affirm the
VOL. XXVIII.—10.

judgment of the learned court below.  The appellant appealed to this court "from so much of the decree of April 20th, 1905, confirming the return and award of the appraisers herein, as fails to require the petitioner, the Baltimore & Ohio Railroad Company, to acquire the entire tract of land described in the answer of the respondents herein, and as permits the said petitioner to limit its acquisition to the portion of the said land described in the petition or instrument of appropriation."

We find in this record no judgment other than the final order of the court confirming the award upon a proceeding under the petition for appropriation of the land taken.  It is true that the answer of the appellants endeavors to raise these collateral questions, but the proceeding is only for the condemnation of the land specified and the just compensation therefor by the instrument of appropriation, and the decree is confined to these two subjects.

This appeal is not from the final order or decree in this proceeding.  It is avowedly an appeal from what is no part of the decree, and which in such proceeding could not be a part of such final order.  It is an appeal from the omission from such order of things extraneous and irrelevant in the proceeding. Had the final order failed to limit the appellee's acquisition to the land described in the instrument of appropriation, it would have been our duty to reverse it.  If there be any mode in which the appellants may seek to compel the appellee to acquire the whole farm, this is not such mode.  We may go further.  If the appellants were not here estopped; if Brentwood road had been closed,—the appellants claim these statutes require the appellee in that state of case to condemn the whole of the Patterson farm.  The appellants' conclusion is based upon the provision of section 5 of the act of February 28, 1903, which covered the case of the closing of a street under any one of the three acts, and which is as follows (32 Stat. at L. 912, chap. 856): "That no streets or avenues shall be closed or abandoned under the provisions of this act or of the acts relating to the Baltimore & Ohio Railroad Company and the Baltimore & Potomac Railroad Company, approved February 12th, 1901, until all of the

property abutting on the streets or avenues, or portions thereof, provided to be closed in said acts, shall have been acquired by said railroad company or companies, or the terminal company referred to herein, either by condemnation or purchase, as hereinafter provided."

The provision just quoted must be considered in connection with section 1 of the act of February 12th, 1901 [32 Stat. at L. 775, chap. 354], which provides "that no portion of any street shall be closed under authority of this act until said railroad company shall have secured control of the property abutting upon said portion to be closed; it being the intent hereof that no property owner shall be deprived of egress from or ingress to his property."

These two provisions of the two acts requiring the purchase or condemnation of property abutting upon streets or parts of streets plainly applied to streets within the city of Washington, and to lots abutting upon such streets, and not to platted squares merely mapping the surface of farms. It was the intent of such provision to require the condemnation or purchase of property abutting upon streets in order that no property owner should be deprived of egress or ingress. These provisions authorizing the closing of open streets provide that streets shall not be closed until all the property on each side is acquired. Until the railroad shall acquire all the property, the streets remain open and the egress and ingress of the abutting owner is undisturbed. It is plain that these provisions do not apply to county roads whereby the railroad would be compelled to acquire farms on both sides. The Patterson farm of 90 acres, as appears by the plat in the record, abuts on Brentwood road from Florida avenue to New York avenue, on the former for several hundred feet, on the latter for several thousand feet; and, by the intended relocation of Brentwood road near Florida avenue, its front on Brentwood road south of New York avenue is undisturbed. Congress intended that designated streets should not be closed, unless and until the railroad acquired the abutting property. Congress was solicitous to guard the access of house and lot owners to their property, and not to require the railroad to acquire farms.

The use for which the land is to be taken having been determined to be a public use, the quantity which should be taken is a legislative, and not a judicial, question. *United States* v. *Gettysburg Electric R. Co.* 160 U. S. 685, 40 L. ed. 583, 16 Sup. Ct. Rep. 427.

These statutes do not plainly require the railroad company to take this farm or others abutting on county roads. As we understand the intent of Congress, it is not the duty of the court to compel the railroad company to acquire it. It nowhere appears in this record that the appellee, as a common carrier, has use for this farm. The appellants suggest no public use; the appellee, by this proceeding and by its counsel, denies that it needs this farm for any public use, or for any use contemplated by Congress in these acts. Courts should be wary not to condemn private property for private use.

As was said in *United States ex rel. Riley* v. *Baltimore & O. R. Co.* 27 App. D. C. 105: "When the power to exercise the right of eminent domain is delegated to a railway company, the courts will supervise the exercise of that power, and restrain any clear case of abuse of the power. Should the courts be asked to compel the railroad to condemn property for which it finds no public use, and when it is plain the property is not needed? Can Congress require a railroad to condemn a farm which is in no sense necessary for the use of the railroad? Private property cannot be taken for public use unless there is a necessity for such taking; for the taking of property when not at all necessary for a public purpose, or the taking of more property than is necessary for a given public purpose, is, in effect, a taking for private use. Randolph, Em. Dom. § 185;' *Atlantic & B. R. Co.* v. *Penny,* 119 Ga. 481, 46 S. E. 665."

The final order or decree of the court below must be affirmed, with costs, and it is so ordered.            *Affirmed.*