## 56640. HEIRS of W. L. CHAMPION et al. v. CITY OF ATLANTA.

SMITH, Judge.

This case involves the condemnation of land in downtown Atlanta for use in constructing an entrance to an underground terminal to be constructed by the Metropolitan Atlanta Rapid Transit Authority. On MARTA's behalf, the City of Atlanta condemned the land in fee simple; the condemnees, appellants here, contend that no more than surface and subsurface easements are necessary for the terminal entrance. The trial court agreed with MARTA and refused to dismiss the fee simple condemnation; we agree with the appellants and reverse the trial court.

### I.

The parcel in issue is located on Peachtree Street near the center of downtown Atlanta. MARTA is developing an extensive terminal facility some 120 feet below Peachtree Street, and the subject parcel will be used for one of four entrances to the terminal, the southwest entrance. Current projections forecast the terminal will handle 85,000 passengers per day, and the southwest entrance will carry the largest share of that load, about 26,350. MARTA's plans call for an escalator to ascend from the train platform to the surface, with the surface area being a landscaped, canopied plaza which will serve as an off-street queuing area for passengers. It is thus generally agreed that MARTA has a need for rights to the surface, subsurface, and 36 feet of air space above the surface. The controversy centers around the condemnees' desire to retain the air rights above 36 feet, and MARTA's conflicting desire to acquire this parcel in fee simple.

MARTA aggressively argues that buildings simply cannot exist in the air (with this we take no exception) and that structural supports and core facilities which would be required to support a structure in the air above this parcel would necessarily interfere with MARTA's plans for passenger trafficking in this area. The total agrument is sharply contradicted in at least two significant ways: (1) Plans for the terminal entrance show

locations for potential structural supports. One MARTA witness explained that this was to retain "flexibility" in the future use. (2) It was admitted by MARTA witnesses that properties around the condemned parcel could conceivably be assembled and structures could conceivably be designed to span over the condemned parcel, in which case the air rights over this condemned parcel would be, MARTA admitted, quite valuable. With this background, we turn to the precise legal question presented.

## II.

There is no question that the City of Atlanta has the power to condemn property on MARTA's behalf and to transfer that property to MARTA. Ga. L. 1965, pp. 2243 et seq.; *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358 (227 SE2d 362) (1976). The development of MARTA's rapid rail transit system is constitutionally defined as a "public purpose for which the powers of taxation and eminent domain may be exercised." Ga. L. 1964, pp. 1008, 1009. And the City of Atlanta has procedures available to condemn private property in fee simple. E.g., Ga. L. 1957, pp. 387, 396 (Code Ann. § 36-613a).

The fact that the city has authority to condemn in fee simple pursuant to a statutory procedure does not carry with it blanket authority always to condemn a fee simple interest; the condemnor can take no more property than is reasonably necessary for the public purpose for which the property is being condemned. *Atlantic &c. R. Co. v. Penny,* 119 Ga. 479, 481 (46 SE 665) (1904); *Savannah, F. &c. R. Co. v. Postal Tel.-Cable Co.,* 115 Ga. 554, 560 (42 SE 1) (1902). The rule of reasonable necessity has been summarized by our Supreme Court as follows:

"The taking of more land than is necessary for public purposes can not be justified on the principles underlying the right of eminent domain. When more land is taken than is necessary for public uses, it is in effect a taking for private use, or for no use; in either of which instances the right does not exist. The [condemnor] has the authority in the first instance to judge of the matter as to how much land should be taken; but if it should appear that the land sought to be condemned is more than is necessary for public purposes, then the amount should be reduced by

the courts to such amount as is necessary for public purposes. We do not mean to say that the [condemnor] is limited to the amount that is absolutely necessary, but it is limited to the amount that is reasonably necessary under all the facts and circumstances regarding the particular matter under consideration. The word 'necessary' is not meant to be used in the sense of 'indispensable.' " *Piedmont Cotton Mills v. Georgia R. &c. Co.,* 131 Ga. 129, 136 (62 SE 52) (1908).

An entity authorized by law to exercise the power of eminent domain is afforded discretion in determining the extent of the estate or the interest in land necessary for the particular public purpose, and that discretion is to be controlled only upon a showing of bad faith. *King v. City of McCaysville,* 198 Ga. 829 (33 SE2d 99) (1945). This rule finds its roots, and its most frequent and stringent application, in those cases where the condemnor has elected which of alternate, more or less equally desirable, sites to condemn. *Savannah, F. &c. R. Co. v. Postal Tel.-Cable Co.,* 112 Ga. 941 (38 SE 353) (1900).

Our present task, then, is to determine whether the record in this case authorizes a finding that MARTA and the City of Atlanta reached a good-faith determination that fee-simple ownership of the subject property was reasonably necessary for the fulfillment of MARTA's public purposes. Considering all the facts and circumstances in this record, we conclude that such a finding was not authorized.

### III.

What is the reasonable necessity for MARTA to acquire the rights to air above 36 feet? MARTA advances four basic reasons why ownership of the air rights will aid in the fulfillment of MARTA's public purposes; our seriatim response to each of these reasons follows.

(1) *The management of the considerable passenger traffic requires that the area not be obstructed by pillars or service cores leading to superadjacent structures.* Unquestionably, efficient traffic flow is a laudatory objective. However, and equally unquestionably, MARTA can take as much of a surface easement as it reasonably needs to facilitate traffic control; conceivably, this easement might extend so far as to preclude the

possibility of placing pillars and service cores on this parcel. But even if it does, MARTA still has no legitimate need for air space above 36 feet to fulfill this purpose.

(2) *The durability of the underlying construction requires that MARTA exclude construction above the surface.* First, this contention can be answered much as the first one: MARTA certainly has authority to obtain negative easements to prevent any activity injurious to the passenger terminal's structural integrity. Moreover, the plans for this entrance show locations for potential supports, thus rather persuasively contradicting MARTA's contention that such supports are structurally unfeasible.

(3) *Security of the passengers requires that there be no darkened crevices or blind corners in the queuing area.* This is a factor that apparently presented no problem in the two north entrances to this station, both of which are within existing buildings, the Merchandise Mart and the Peachtree Center Harris Tower. And it apparently presented no problem in the design of MARTA's Ashby Street Station, where MARTA intends to sell air rights to a developer, reportedly for the construction of a parking lot and possibly a merchandise mart. We remain unconvinced that passenger security was a motivation for MARTA to attempt to condemn the subject property in fee simple.

(4) *Aesthetical concerns require ownership of the fee.* Again, where are the aesthetical concerns at Ashby Street, where superadjacent construction is being encouraged? More to the point, MARTA's public purpose is to provide a transportation system, not to beautify downtown Atlanta. To the extent that attractive surroundings reasonably enhance the system's capacity to lure patrons, or its efficiency, etc., aesthetics relate to MARTA's public purpose. However, MARTA has failed to produce any evidence showing that the absence of ad coelum ownership would materially impair its ability to render this plaza area attractive. Presumably, the two north entrances to this station will be sufficiently attractive, and the Ashby Street station will be attractive, and we are confident that MARTA's skilled designers and

planners can mold the surface of this parcel, and the 36 adjacent vertical feet, into an attractive area.

## IV.

In counterpoint to the above alleged reasons for condemning the subject property in fee simple, we find in the record the following. MARTA has a board policy to condemn fee simple, rather than lesser, interests in desired property. MARTA regards the derivation of income from its excess property holdings as a meaningful and propitious method for offsetting future operating costs. MARTA designed this area with the possibility of future air-rights development in mind. And MARTA perceives the air rights to this parcel to be quite valuable. As we see the evidence, it requires a conclusion that the subject property was not condemned in fee simple for any public purpose, but rather for a private purpose, or no purpose at all.

Judicial scrutiny of condemnation proceedings is necessary in cases such as this to prevent unconstitutional taking of private property. See, e. g., Knappen v. Dept. of Transportation, 352 S2d 885 (Fla. App. 1977). Where the attempted condemnation seeks property in excess of public needs, judicial intervention is called for. In this case it is clear that MARTA needs no more for its substation than a permanent, nonexclusive easement for the subsurface, surface, and the first 36 feet above the surface. This would not preclude future development of the air space above the easement area so long as the public use and safety is not threatened or impaired.

In view of the fact that only the extent of the taking, and not its location, is in dispute, this court, rather than ordering the dismissal of the proceedings as an unconstitutional exercise of eminent domain, will instead remand the case to the trial court with the following instructions: The condemnor shall amend its complaint by changing the legal description of the condemned property to comply with this opinion. The compensation issue can then be resolved by the jury trial which is still pending.

*Judgment reversed with direction. Deen, P. J., and Banke, J., concur.*

Argued October 3, 1978 — Decided February 9, 1979 — Rehearing denied March 28, 1979 — 

*Troutman, Sanders, Lockerman & Ashmore, J. Kirk Quillian,* for appellants.

*Murray F. Bahm, Kutak, Rock & Huie, W. Stell Huie, David G. Russell, Charles N. Pursley, Jr.,* for appellee.

### On Motion for Rehearing.

"The taking or injuring of private property for the public benefit is the exercise of a high power, and all the conditions and limitations provided by law, under which it may be done, should be closely followed. *Too much caution in this respect cannot be observed to prevent abuse and oppression.*" (Emphasis supplied.) *Thomas v. City of Cairo,* 206 Ga. 336, 337 (57 SE2d 192) (1950).

MARTA, in its motion for a rehearing, alleges that this court's decision in this case is revolutionary. To the contrary it is not revolutionary but is grounded upon well-settled and long-standing Georgia law.

In the case of *Barrett v. State Highway Dept.,* 211 Ga. 876, 877 (89 SE2d 652) (1973), the court said, "[t]he law is well settled that, when the State gives to a person or corporation the right of eminent domain, it carries with the grant of this power the right to *condemn such property as may be reasonably necessary for the purpose for which the property is to be condemned . . .*" (Emphasis supplied.) In this case before us, MARTA needs access to its terminal facility located some 120 feet below Peachtree Street. This access is to be gained through an opening in the surface of the ground to be covered by some structure that will be 36 feet in height. The public purpose for which this parcel was condemned was to furnish this access way for passengers to reach the facility some 120 feet below the earth's surface. There is no logical reason or explanation as to why MARTA needs the fee simple title to air rights above this 36 feet in order to carry out the public purpose for which it was created, that is, to transport people on a public transportation system.

The word "revolutionary" is much more applicable to describe MARTA's contention that this court has no pow-

er on review to find that the evidence establishes unauthorized and unlawful conduct. This court does find from the evidence in this case that MARTA has abused its power of eminent domain inasmuch as it has no need of any property (air rights) above the ground other than the 36 feet necessary to erect a cover over the entrance way to the terminal facility some 120 feet below the surface of Peachtree Street. To allow MARTA to condemn something it has no need for is an unlawful taking and an unconstitutional exercise of its power of eminent domain. The power of eminent domain was granted MARTA for the purpose of building a transportation system, not to enter into the real estate business. See Karesh v. City Council of City of Charleston, 247 SE2d 342 (1978).

*Motion for rehearing denied.*