## 58893. HARWELL v. GEORGIA POWER COMPANY.

McMURRAY, Presiding Judge.

On March 14, 1979, Georgia Power Company initiated an in rem condemnation proceeding against certain real property owned by Camille Hardy Harwell. In this condemnation before a special master pursuant to Code Ann. Chapter 36-6A (Ga. L. 1957, pp. 387, 388; as amended), Georgia Power Company sought "to acquire the unencumbered fee simple title" to 71.768 acres of land for use in the Rocky Mountain Project, a pump storage project located in Floyd County. The condemnor prayed that "the Court decree and adjudge the absolute fee simple title in and to said property . . . free of lien and encumbrance, to vest in Petitioner."

The project involved in this condemnation proceeding is of a rather unique nature as will be seen from the following findings of fact by the special master:

"The project is located in the northwestern portion of Floyd County, Georgia, and its purpose is to generate electricity which, upon completion of the project, will be sold to customers of Georgia Power Company. The anticipated completion date is in 1982.

"The granting of a license by the Federal Energy Regulatory Commission is necessary for the construction of such a project. In its application for such license, the applicant is required to show a need for the power and to show what the applicant proposes to do by way of project construction. The company has been granted a license for the construction of the Rocky Mountain Pump Storage Project.

"It is to be a hydroelectric project which will generate electricity by the passing of water through turbine generating machinery. This differs from the conventional project where a dam is constructed on a river and power generation is dependent upon the water flow. A pump storage project depends upon a volume of water which is pumped from a lower reservoir into a higher reservoir during times of low demand, and in times of peak demand the water is released to flow back down to generate electricity. In the Rocky Mountain Pump Storage Project, Heath Creek has a relatively low flow, but will be dammed up to provide a volume of water. The lower reservoir will be divided into three different impoundments: a lower operating pool to cover approximately 400 acres; auxiliary pool No. 1 to cover approximately 387 acres; and auxiliary pool No. 2 to cover approximately 120 acres. The upper operating pool is to be constructed on top of a mountain and will cover approximately 441 acres. The lower operating pool will be located along the base of the mountain, and its normal daily level

will fluctuate approximately 29 feet as water is pumped from it and then permitted to flow back into it. Auxiliary pools No. 1 and No. 2 will provide reserve volume which may be released over spillways into the lower operating pool when needed. The levels of the auxiliary pools will remain relatively constant. The waters of Heath Creek will be needed to replace that lost through evaporation and to maintain some flow below the dam. A transmission line will be located at the base of the mountain adjacent to the lower operating pool. It will be the only link between the power house which lies approximately 6000 feet northeasterly of the Harwell property and the switching station which lies approximately 6700 feet southerly of the Harwell property. The transmission line is necessary for the operation of the project. It will lie within 900 feet to the east side of the Harwell property.

"The property sought to be condemned, known as the Harwell property, consists of 71.768 acres and is shown according to plat of survey attached to the petition . . . All of the Harwell property at this location is being sought. It is bounded on the northwest by Big Texas Valley Road upon which it fronts approximately 917 feet; on the west by Fouche Gap Road upon which it fronts approximately 886 feet; and on the north, east and south by property already owned by the power company. The property immediately across Big Texas Valley Road from the Harwell property is not being acquired for the project. The location of the Harwell property with reference to project pools and structures is shown on various exhibits admitted into evidence at the hearing. This property is primarily rolling wooded land with a residence and outbuildings located at the intersection of Big Texas Valley Road and the Fouche Gap Road. A portion of the timber was cut off in 1976. As to topography, the elevation rises to the east with the highest points being along a ridge which extends along the eastern portion of the property. The ridge overlooks a gorge through which Heath Creek flows. The topography is shown on various contour maps introduced into evidence at the hearing. The most eastern portion of the Harwell tract will be approximately 200 feet from the nearest portion of the lower operating pool; the eastern half of the south boundary of the Harwell property will be approximately 1200 feet north from the nearest portion of the auxiliary pool No. 2; and a portion of auxiliary pool No. 2 will cover the southwestern portion of the Harwell property. The property between these pools and the Harwell property has already been acquired by the power company. The spillway on auxiliary pool No. 2 is located approximately 1050 feet from the Harwell property.

"According to the testimony of the power company's hydraulics engineer, the stripping of vegetation off the Harwell property would result in erosion off the steep slopes, this resulting in silt flowing into the lower operating pool and into auxiliary pool No. 2. The silt would reduce the volume available in the reservoir for water and would reduce the generating capacity of the project. He further testified that the property sought to be condemned is needed as a buffer zone to protect project structures from sabotage, that a zone will be a more effective barrier for this purpose than a fence; and that plans call for the power company to be able to exclude all visitors from various areas in order to protect project structures. He further testified that in his opinion the property sought to be condemned is necessary to the power company for security purposes in view of its location with respect to the lower operating pool, the spillway on auxiliary pool No. 1, and the transmission line to be located at the base of the mountain in a position vulnerable to damage from saboteurs who might be located on the Harwell property. He further testified that an access road over the Harwell property is necessary for access from the Fouche Gap Road to the north abutment of the spillway; that the acquisition of air rights is necessary in order that vegetation growth may be permitted so as to provide ground cover; and that the acquisition of mineral rights is necessary in order to prevent access of anyone attempting to remove them. A necessity for the property for security purposes is said to exist during the construction period as well as for access to the spillway during construction. After construction is completed, the property will be allowed to re-vegetate and to return to its natural state in order to minimize erosion.

"Exhibit . . . to the application for license has to do with recreational uses and it reflects a proposed camping area to include the Harwell property . . . Exhibit . . . is a preliminary environmental impact study and reflects that a license is granted for a period of 50 years. It is presently the practice for a holder of a license to apply for a new license as the original term of the old license draws near to an end. Exhibit . . . and amendment to Exhibit . . . include visitation projections and proposed charges for recreational users. According to present plans, the fees from recreational users will be used to cover operating costs for the recreational aspects of the project. The entire original Exhibit . . . has been amended, but the amendment has not yet been acted upon by the Federal Energy Regulatory Commission. Exhibit . . . provided the power company's assessment of the environmental impact of the project. The government has now completed its own study of the environmental impact.

"Various exhibits introduced into evidence at the hearing reflect various proposed recreational uses over the project area including a visitor's center, picnic areas, boat rentals, concession centers, camping areas, trailer park areas, fishing areas, hiking trails and overlook areas. Under present plans, the power company reserves the right to completely restrict all recreational uses as it might determine to do in cases of strike or civil disobedience. Under the amendment to Exhibit . . ., no recreational facilities are presently planned to be located on the Harwell property. Amendment to Exhibit . . . shows the areas of the Harwell property as the 'area best suited for development.'

"The development of the Harwell property for recreational uses such as camping trailer sites with associated buildings such as a general store and crafts shop is a feasible use of the property according to testimony of a civil engineer and land planner who has prepared a lay out for such development for the Harwells."

Georgia Power Company, as condemnor, set forth in its petition that the acquisition by condemnation of the unencumbered fee simple title to the tract of land described in its petition, together with all appurtenances and improvements located thereon, was required in order to construct, operate and maintain an electric generating plant and other necessary facilities which will become a component part of condemnor's network of generating, transmission and distribution systems for the public purpose of generating, transmitting and distributing electric current to the public generally.

By her responsive pleadings and again at the hearing before the special master Mrs. Harwell, as condemnee, challenged the authority of Georgia Power Company to condemn the fee simple title, the necessity of the taking of the entire tract of land, and the necessity of using the special master procedure. The special master ruled against Mrs. Harwell on these issues, and they along with additional issues were again raised in Mrs. Harwell's exceptions to the return of the special master. The superior court denied each and every exception to the return of the special master and entered judgment awarding Georgia Power Company an unencumbered fee simple title in the tract of land. In its judgment the superior court decreed, ordered, and adjudged "that the unencumbered fee simple title to that certain tract of land . . . 71.768 acres, more or less . . . is hereby condemned in fee simple . . . and . . . [condemnor], and its successors and assigns, *are hereby vested with full, complete, and unencumbered fee simple title to all the land, improvements, and appurtenances thereon.*" (Emphasis supplied.)

In the case sub judice the condemnor is not seeking merely a right of way or easement, of a specified width, over condemnee's lands for construction and maintenance of a transmission line or lines but rather is seeking to acquire by condemnation the unencumbered fee simple title to 71.768 acres for the construction, operation and maintenance of a hydroelectric project which will generate electricity for transmission and distribution to the public.

An appeal as to valuation remains pending therefore final judgment has not been entered in this case. See in this regard *Hardy v. Ga. Power Co.,* 151 Ga. App. 803 (261 SE2d 749). However, this case is properly before this court on interlocutory appeal, permission having been granted after proper application pursuant to Code Ann. § 6-701 (a) 2 (Ga. L. 1975, pp. 757, 758). *Held:*

1. Appellate review of the question of what property interest has been taken is not barred by the last sentence of Code Ann. § 36-610a (Ga. L. 1957, pp. 387, 392; 1966, p. 388) which presents the issue by stating: "... it being the purpose of this Chapter to, so far as is reasonably possible, protect the rights of all parties to be heard at the time of the hearing before the special master, but that, so far as the right to take or damage the property, or any interest therein, by the condemning body, upon the payment of the amount of the award by the special master into the registry of the court, is concerned, the award of the special master and the judgment of the court condemning the property to the use of the condemning body shall be *conclusive.*" (Emphasis supplied.) *Johnson v. Fulton County,* 103 Ga. App. 873 (121 SE2d 54) and *Brown v. Ga. Power Co.,* 134 Ga. App. 784 (216 SE2d 613) cited by condemnor are inapposite on the facts. In both cases (*Johnson* and *Brown*) the condemnee failed to raise or preserve for appeal the question of what property interest was taken.

That appellate review of the question of what property interest is taken in a condemnation under the special master procedure is allowed when properly raised and preserved has been decided by implication where this question has been considered and decided on appeal. One such case is *Heirs of Champion v. City of Atlanta,* 149 Ga. App. 470 (254 SE2d 706), reversed on other grounds in *City of Atlanta v. Heirs of Champion,* 244 Ga. 620 (261 SE2d 343). Note that both appellate courts ruled on the issue of what property interest was taken.

2. The power of eminent domain is inherent in the sovereign state, but lies dormant until granted by act of the legislature. Under the provisions of Code § 36-801 corporate utilities supplying electric power to the public, such as Georgia Power Company, have been

granted the power of eminent domain.

The Special Master Act (Code Ann. Chapter 36-6A (Ga. L. 1957, pp. 387, 388; 1962, pp. 461, 462; 1967, p. 825)) and more particularly Code Ann. § 36-601a (Ga. L. 1957, pp. 387, 388; 1967, p. 825) provides "[a]s used in this Chapter, 'condemning body' shall mean the State of Georgia, or any branch of the Government of the State of Georgia or any county, municipality, or other political subdivision of the State of Georgia or any housing Authority now or hereafter established which is vested with the power of eminent domain, and all other persons, firms *and corporations possessing the right or power of eminent domain,* or which shall hereafter be given said right or power of eminent domain." (Emphasis supplied.)

As held by the Supreme Court in *Sadtler v. City of Atlanta,* 236 Ga. 396, 398 (223 SE2d 819), "the Special Master Act [Code Ann. Ch. 36-6A, supra.] enacted in 1957 provides that a condemning body may petition the superior court of the county having jurisdiction 'for a judgment in rem against said property, or any easement or other interest in said property, *condemning the same in fee simple* to the use of the petitioner upon payment of just and adequate compensation therefor.' Code Ann. § 36-603a." (Emphasis supplied.)

3. A party having the right to condemn is vested with a large discretion in the selection of the particular property to be condemned. Therefore, in the absence of bad faith, the determination by the condemnor, in the case sub judice, of reasonable necessity for acquiring the condemnee's land cannot be disturbed by this court. *Piedmont Cotton Mills v. Ga. R. & Electric Co.,* 131 Ga. 129 (2), 134 (62 SE 52). See also *King v. City of McCaysville,* 198 Ga. 829 (2) (33 SE2d 99); *Kellett v. Fulton County,* 215 Ga. 551, 555 (3) (111 SE2d 364); *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358, 360 (4) (227 SE2d 362); *City of Atlanta v. Heirs of Champion,* 244 Ga. 620, supra; *Pye v. State Hwy. Dept.,* 226 Ga. 389 (6), 406 (175 SE2d 510).

4. Portions of the land in question are to be flooded, used for erosion control and possibly have an access road constructed on it. The remaining land is being taken for the purposes of a security zone for the protection of the facility. We believe that providing protection for the electric generating equipment is a use necessary for the overall purpose of providing electric power to the public and thus a purpose for which real property may be taken by the eminent domain powers conferred upon condemnor. See *Nolan v. Central Ga. Power Co.,* 134 Ga. 201, 203 (1, 2) (67 SE 656).

Condemnee has presented evidence as to recreational facilities planned by the condemnor for the security buffer zone. The application by condemnor to the Federal Power Commission (and later to the Federal Energy Regulatory Commission) for a license to operate the facility contained detailed plans for the construction of boat ramps, campgrounds, baseball diamonds, hiking trails and other recreational facilities. Based on this evidence the condemnee contends that a large portion of her land is being taken for recreational uses unrelated to the purpose of generating electricity.

Condemnor's evidence is that such recreational use is merely incidental to the preservation of the buffer zone for security purposes, that there was no present plan for the erection of the proposed facilities and that if they were constructed they would not interfere with the primary security purpose. Although issues of bad faith and capricious conduct may have been raised by condemnee's evidence, there was conflicting evidence so that the determination of the factual issue was for the superior court and will not be disturbed on appeal. *Barrett v. State Hwy. Dept.,* 211 Ga. 876, 877 (2) (89 SE2d 652).

5. "So long as the procedure used to take the condemnee's property is in accordance with the law, he has no ground of complaint because another procedure, also authorized by law, was not used." *State Hwy. Dept. v. Respess,* 111 Ga. App. 421, 423 (2) (142 SE2d 73). There is no merit in condemnee's contention that the special master proceeding should have been dismissed for failure of Georgia Power Company to prove the necessity of a quick taking. See also *Johnson v. Fulton County,* 103 Ga. App. 873, 876 (1), supra.

6. Relying upon the language of Code § 36-811, condemnee contends that Georgia Power Company is required to make a showing that it had attempted to negotiate the purchase of condemnee's land as a prerequisite to its right to maintain the condemnation procedure. This contention overlooks the fact that the provisions of Code § 36-811 contemplate only condemnation proceedings pursuant to Code Chapters 36-2 through 36-6. The special master procedure is an in rem proceeding which contains no requirement of negotiation. Compare *St. Clair v. State Hwy. Bd.,* 45 Ga. App. 488 (1, 2) (165 SE 297).

7. Condemnee's remaining enumerations of error deal with exceptions to the findings of facts of the special master. Although there is conflicting evidence on some issues, each of the findings of fact in question is supported and authorized by the evidence. *Barrett v. State Hwy. Dept.,* 211 Ga. 876, 877 (2), supra.

*Judgment affirmed. Banke and Sognier, JJ., concur.*

ARGUED OCTOBER 30, 1979 — DECIDED MARCH 11, 1980 —
REHEARING DENIED MARCH 25, 1980 — 

*J. Corbett Peek, Jr., James Garland Peek,* for appellant.
*Karl M. Kothe,* for appellee.