S97A0632, S97A1056. BLACK et al. v. FAYETTE COUNTY;
and vice versa.
(492 SE2d 517)

BENHAM, Chief Justice.

This condemnation action in which Fayette County employed the special master process of condemnation to take an easement for the purpose of installing a finished-water pipeline is related to the one before us in *Black v. Fayette County,* 265 Ga. 175 (453 SE2d 692) (1995). There, we reversed the trial court's order approving the special master's award of an easement for the installation of a raw-water pipeline, holding that the special master hearing was not conducted within the time prescribed by statute. Because Fayette County had proceeded during the pendency of the appeal with the construction of the raw-water pipeline for which the condemnation was commenced, the owners of the property commenced an inverse condemnation action after this Court ruled the condemnation ineffective. While the inverse condemnation action was pending, Fayette County commenced another special master proceeding to condemn the same property for the construction of a finished-water pipeline. The special master issued an award rejecting condemnees' objections to the condemnation. The trial court issued a judgment accepting the special master's award with two exceptions: the trial court rejected a recommendation that Fayette County be awarded fee simple ownership of the subject property, and awarded an easement, as the county had requested; and the width of the easement was reduced from twenty feet to ten feet. In response to a motion from the county to amend the

---

[14] *Worthy,* 253 Ga. at 665.

judgment and a motion from the condemnees to dismiss the action, the trial court entered an order in which it held that the ten-foot permanent easement it had already granted was the half of the requested twenty-foot easement not occupied by the raw-water pipeline the county had already built and which is the subject of the inverse condemnation action; reduced the twenty-foot temporary construction easement awarded by the special master to ten feet; relocated the temporary easement from a position parallel with the permanent easement to a position coextensive with the permanent easement; and reduced the duration of the temporary easement from six months to sixty days. In Case No. S97A0632, the condemnees take issue with the conduct of the special master hearing, with the trial court's decision that this proceeding could go forward while the inverse condemnation action was pending, with the legal sufficiency of the petition for condemnation, with the denial of their claim of abuse of the power of eminent domain, with the legal sufficiency of the description in the petition for condemnation, and with the grant of the county's motion to amend the judgment. In Case No. S97A1056, Fayette County takes exception to the changes made in the size, location, and duration of the easements.

1. Several of the condemnees' enumerations of error are predicated on the alleged insufficiency of service on Black. Specifically, the condemnees contend that OCGA § 22-2-107 (c) is unconstitutional in its provision for service by leaving a copy at the residence of the condemnee. However, it is uncontested that Black got actual notice of the proceedings and participated fully in them. The objections concerning service are, therefore, waived: "Since the [condemnees] participated in the special master hearing on the date that it was held, they cannot complain about lack of service and notice of the hearing." *Taylor v. Taylor County*, 231 Ga. 209, 210 (200 SE2d 887) (1973).

2. Another group of the condemnees' enumerations of error on this appeal are based primarily on the condemnees' contention that Fayette County could not proceed with a formal condemnation while there was an inverse condemnation action pending with regard to the same property. The trial court, in ruling on this issue in the context of exceptions to the special master's award, denied the exceptions on the ground that the issue of the illegality of Fayette County's actions in building the first pipeline was not before the special master nor the trial court in this condemnation action, and that the only issues properly before the special master and the trial court concerned the most recent petition for taking. Neither side in this litigation has offered, and we have not found, any precedent controlling this issue under the peculiar circumstances of this case. Upon consideration, however, we adjudge the trial court's approach in this matter to be correct: this condemnation action is separate from the inverse con-

demnation action and the latter is no reason to delay the former. Although completion of this condemnation action, with the consequent taking of the same property involved in the inverse condemnation action, would necessarily have some impact on the inverse condemnation action, an attempt by this Court to determine the exact nature of that impact would be premature and advisory. We find it sufficient to hold in this case only that the previous actions by Fayette County with regard to the property involved in this condemnation action were no basis for exceptions to the special master's award in this matter, and the trial court did not err in so ruling.

3. In its appeal, Fayette County contests the limitations the trial court placed on the easements awarded. The trial court's first order in this matter awarded only a ten-foot-wide permanent easement, without specifying its location. In a supplementary order prompted by Fayette County's motion to amend the judgment and by a motion to dismiss from the condemnees, the trial court specified that the permanent easement would be the "second ten [10] feet" of the requested easement, and noted in a footnote that the first ten feet were already occupied by the raw-water pipeline which is the subject of the pending inverse condemnation action. The stated basis for the trial court's reduction of the permanent easement was testimony by a witness for the county that only a ten-foot easement would be necessary for installing one water line. However, that witness's testimony, taken in context, does not support the trial court's reduction of the easement's width. The witness testified that a 20-foot easement was necessary in this particular location because of the difficulty presented by that particular terrain. The trial court's reduction of the easement, though apparently a well-meaning attempt to limit the impact of the judgment in this case on the pending inverse condemnation action, ignored the reality of the situation, as shown by testimony and by photographs included in the record. The above-ground portion of the proposed finished-water pipeline is to be built on the same supports on which the raw-water pipeline has already been placed. If the easement for the finished-water pipeline encompasses only ten of the twenty feet occupied by those supports, trespass on the first ten feet would be inevitable. The testimony of the witness whose testimony the trial court cited in its reduction of the width of the easement made clear that the terrain underlying the particular part of the pipeline involved in this case is so difficult to work with that the full width of the requested easement would be necessary, even though the finished-water pipeline was being installed parallel to and on the same supports as the raw-water pipeline. Our review of the record persuades us that the trial court's reduction of the easement on the ground that only ten feet would be needed is without evidentiary support.

[This] Court [has] held, as to a claim that the condemnor had taken more land than was necessary . . . , that "no court in these circumstances should have interfered with the decision of the condemning authority," . . . . "In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, as to the necessity, and what and how much land shall be taken. [Cits.]"

*West v. Dept. of Transp.,* 176 Ga. App. 806 (338 SE2d 45) (1985). The trial court found specifically in its judgment that there was no bad faith in Fayette County's exercise of the power of eminent domain in this case. We conclude, therefore, that the reduction of the width of the easement, which amounts to substituting the trial court's judgment for that of the condemning authority, was error.

4. The same problem exists with regard to the other three limitations placed on the easements in the amended order. Like the reduction of the permanent easement's width, the reduction of the width of the temporary construction easement to ten feet is without support in the evidence. The relocation of the temporary easement to be coextensive with the permanent easement has the effect, as Fayette County argues, of denying the county any temporary easement at all in the portion of the easement where the pipeline is to be above-ground, built on metal supports which are already in place. Finally, the reduction of the duration of the temporary easement from the six months approved by the special master to a period of sixty days from the date of the trial court's order is also without support in the evidence. For the same reasons that the trial court's reduction of the width of the permanent easement was error, the changes made to the temporary easement requested by Fayette County and awarded by the special master were error.

In summary, the trial court was correct in denying the condemnees' exceptions to the special master's award, but erred in making changes to the easements. Upon the return of the remittitur in these appeals, the trial court is directed to enter a judgment consistent with this opinion. In light of those rulings, the complaints of the condemnees regarding the adequacy of the description in the trial court's amended order are moot and need not be considered.

*Judgment affirmed in Case No. S97A0632 and reversed in Case No. S97A1056. All the Justices concur.*

DECIDED NOVEMBER 3, 1997.

*McNally, Fox & Cameron, Dennis A. Davenport,* for appellant.
*H. Edward Marks, Jr.,* for appellees.