**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 4, 2015**

# In the Court of Appeals of Georgia

A15A1382. WHITE et al. v. THE RINGGOLD TELEPHONE   JE-065
  COMPANY.

ELLINGTON, Presiding Judge.

This appeal concerns a petition by The Ringgold Telephone Company to condemn approximately .03 acres of land in Catoosa County for the purpose of providing telephone and telecommunication services. Appellants Brian D. White and Woodland Manor, LLC were among the respondents named in the petition. Following a hearing before a special master, the trial court entered an order condemning the property for Ringgold's use upon its payment of $3,974.69 into the registry of the court. On appeal, White and Woodland Manor contend that the trial court erred in denying their motion to dismiss the petition and in entering the condemnation order because, as a statutory prerequisite to the condemnation, Ringgold was required to

show that it could not procure the property by contract, and because Ringgold's petition was premature pending resolution of a previously filed lawsuit by White against Ringgold in which Ringgold's easement rights to the property were at issue. For the reasons set forth below, we disagree and affirm.

The record shows that on March 26, 2004, White and Ringgold agreed that White would grant a perpetual easement to Ringgold to place "communication cabinet[s] . . . along with a concrete pad" on a portion of certain Catoosa County real property (the "Property") then owned by White.[1] The easement was recorded in the county records shortly thereafter. Consistent with the easement, Ringgold placed a concrete pad and telecommunication cabinets on the Property and began providing its customers with internet and telephone services from the facility.

Under the terms of their agreement, Ringgold agreed to provide NexTV video service and internet service at no charge to White's residence and office, subject to the condition, among others, that "[t]he video service and internet service being provided for herein shall continue until [Ringgold] sells, transfers, assigns, disposes

---

[1] Testimony at the special master hearing shows that White subsequently conveyed the property to Woodland Manor.

of, ceases operation of or stops [Ringgold's] NexTV service television product and/or internet service[.]"

On November 19, 2012, White, who alleged that Ringgold had stopped providing the agreed-upon cable and internet service, filed a complaint in the Superior Court of Catoosa County seeking damages for breach of contract and a declaratory judgment canceling the easement and requiring the removal of the concrete pad and Ringgold's cable and internet equipment. White also asserted claims for breach of implied promise to pay, trespass, and ejectment.

On September 4, 2013, while White's lawsuit was pending and the parties were engaged in discovery, Ringgold filed an in rem condemnation petition seeking fee simple rights and an access easement to the Property, described as a ".03 acres, more or less" parcel in Catoosa County.[2] White and Woodland Manor moved to dismiss the petition on the ground that Ringgold already had a contractual right to possess the Property and so could not show that it failed to secure the Property by contract. The

---

[2] Ringgold asserted, and White and Woodland Manor do not contest, that Ringgold is a telegraph or telephone company that may exercise the right of eminent domain under Title 22. See OCGA § 46-5-1 (a); OCGA § 46-5-63 (23). Ringgold filed the in rem condemnation under the provisions for proceedings before a special master, OCGA §§ 22-2-100 through 22-2-114.

trial court denied the motion to dismiss and proceeded to appoint a special master to make and file with the clerk of court an award and a report of findings.

At the outset of the special master hearing, the parties stipulated to the accuracy of the legal description of the Property, Ringgold's compliance with the "technical requirements" of Title 22, and the fair market value of the Property as of the date of the hearing. The special master heard testimony from four witnesses, including Phil Erli, Ringgold's executive vice president, and Mike Schmidt, an engineering manager for Ringgold. Schmidt, an expert in the field of engineering, testified, among other things, that it was necessary for Ringgold to take the Property in order to continue to provide safe, reliable, and quality telephone service to its customers. Erli testified, among other things, to the negotiations between Ringgold and White for the purchase of the Property.

According to Erli, he approached White in 2010 and told him that Ringgold was exiting the NexTV business. White suggested that Ringgold buy the Property. The parties initially agreed on a purchase price, but a title search revealed a number of problems, liens, and encumbrances. Ringgold informed White that it needed clear title to move forward White later telephoned Ringgold and demanded that it remove its facilities from the Property, and White thereafter filed his civil action against

Ringgold. Before pursuing the condemnation, Ringgold made a final offer to purchase the Property in an amount at least equal to what it believed to be just and adequate compensation. White and Woodland Manor offered no evidence at the hearing.

Following the hearing, the special master filed an award recommending to the court that the Property be condemned by a judgment in rem upon payment of $3,974.69 into the registry of the court. White and Woodland Manor timely excepted to the special master's award to the extent it was based on a finding that it was necessary for Ringgold to condemn the property.[3] The trial court, following another hearing, and upon consideration of White and Woodland's exception, adopted the award of the special master and found the Property to be condemned in rem to the use of Ringgold upon payment of $3,974.69 into the registry of the court.

On appeal, White and Woodland Manor argue that the trial court erred in denying their motion to dismiss the petition and entering its order authorizing the condemnation of the Property because Ringgold was required to establish that it had failed to secure the Property by contract to satisfy the statutory prerequisite set forth

_____

[3] See *Styers v. Atlanta Gas Light Co.*, 263 Ga. 856, 859 (439 SE2d 640) (1994) ("[T]he timely filing of exceptions to non-value issues passed on by the special master is the means by which judicial review of those issues may be had.").

in OCGA § 22-1-6, and to show that the taking was necessary. Ringgold cannot make this showing, they argue, because Ringgold is currently in possession of the Property and its contractual rights thereto remain to be determined in the pending action between Ringgold and White. To the extent the issue is one of law, particularly whether White's pending civil action prohibited the trial court from proceeding with the condemnation, our review is de novo. See *Eagle's Landing Christian Church, Inc. v. Henry County*, 308 Ga. App. 416, 416-417 (708 SE2d 23) (2011). The trial court, however, sits as the finder of fact in ruling on exceptions to the special masters ruling, and its "judgment will not be disturbed if there is any evidence in the record to sustain it." (Citation and punctuation omitted.) *MARTA v. Central Parking System*, 167 Ga. App. 649, 652 (3) (307 SE2d 93) (1983).

White and Woodland Manor contend that, as prerequisite to the taking, Ringgold was required to comply with OCGA § 22-1-6,[4] which states:

---

[4] Ringgold does not contest that it was required to comply with OCGA § 22-1-6. See OCGA § 22-2-102 (a) (providing, by 2006 amendment, "in addition to the requirements set forth in Chapter 1 of this title," condemnor shall "file a petition in a superior court having jurisdiction for a judgment in rem against the property . . . ."). Compare *Harwell v. Georgia Power Co.*, 154 Ga. App. 142, 148 (6) (267 SE2d 769) (1980) (attempt to negotiate the purchase price is not prerequisite to condemnation under special master procedure). We note that the subject of pre-condemnation negotiations is addressed with specificity in OCGA § 22-1-9. Whether Ringgold complied with OCGA § 22-1-9 is not at issue in this appeal.

If a person who is authorized to exercise the power of eminent domain cannot by contract procure the property or the easement, right of way, waterway, franchise, or other interest sought to be condemned, the person may take or damage the property or interest upon paying or tendering to the owner thereof just and adequate compensation.

By reference to this statute, our Supreme Court has said that "[f]ailure to secure the property by contract, by reason of the inability of the parties to agree upon the compensation to be paid therefor, is an essential prerequisite to the condemnation of private property for public uses." *Elberton v. Hobbs*, 121 Ga. 750 (49 SE2d 780) (1905). The Supreme Court later held that "it is necessary, preliminary to the commencement of the proceedings, for the condemnor to make an effort to agree with the owner of the property upon the price to be paid for the land." *Miller v. State Highway Dept.*, 200 Ga. 485 (1) (37 SE2d 365) (1946). The evidence at the special master hearing showed that Ringgold made an effort to agree on a purchase price for the Property, but that those negotiations ultimately failed. This was sufficient to show that Ringgold could not procure the property by contract within the meaning of OCGA § 22-1-6. See *Miller v. State Highway Dept.*, 200 Ga. at 485 (1) (Where county representative stated that he wanted to pay the purchase price for the land, if he and the owner could agree on it, or by arbitration, and owner said that he did not

7

want either one, nor "the road at this place," there was sufficient compliance with requirement that condemnor make an effort to agree upon price to be paid.).

White and Woodland Manor nevertheless contend that until Ringgold's contractual rights to the Property are resolved in the pending lawsuit, the requirement of OCGA § 22-1-6 that the condemnor "cannot by contract procure the property" will remain unsatisfied. The Georgia courts, however, have consistently found that condemnation actions are separate from suits for damages related to the property to be taken and that "the latter is no reason to delay the former." *Black v. Fayette County*, 268 Ga. 570, 571-572 (2) (492 SE2d 517) (1997). See *Simon v. Department of Transp.*, 245 Ga. 478, 479 (265 SE2d 777) (1980) ("Though the law generally favors the prevention of a multiplicity of actions, it appears that condemnation law in Georgia rather strictly limits the relevant evidence in condemnation cases and therefore separate suits for different kinds of damages are not uncommon."); *Cook v. State Highway Board*, 162 Ga. 84, 95-96 (132 SE 902) (1926) (The condemnation proceeding by the highway department was not a bar to the owners' action for damages against the counties, and the action for damages was not a ground for arresting the condemnation proceeding.). White and Woodland Manor show no basis for creating an exception to this rule here. The two suits involve different causes of

8

action. Compare OCGA § 9-2-44 (a) ("[T]he pendency of a former action for the same cause of action between the same parties in the same or any other court having jurisdiction shall be a good cause of abatement."). Further, the dispute between White and Ringgold concerns the easement rights arising from the 2004 agreement, whereas in the condemnation proceeding Ringgold sought to procure a fee simple interest in the Property. White and Woodland Manor argue that public policy favors that "[p]eople should do what they say they will do," *Baker v. Jellibeans, Inc.*, 252 Ga. 458 (1) (314 SE2d 874) (1984), but White has an available remedy for the alleged breach of contract. See id. (Where there is consideration for the promise, "the law will require competent adults to do what they voluntarily promise to do *or pay damages for the breach*[.]") (punctuation omitted; emphasis supplied). The purpose of the special master condemnation proceeding, on the other hand, is to provide a "quick and effective adjudication of the just and adequate compensation to be paid the owner or owners of such property before taking the same." OCGA § 22-2-101. White and Woodland Manor show no authority under Title 22, or otherwise, which would authorize the delay or abatement of the condemnation proceedings. Rather, the two actions are separate, and White's filing of the first action did not preclude the special

9

master and the trial court from addressing Ringgold's petition for taking. See *Black v. Fayette County*, 268 Ga. at 571-572 (2).

White and Woodland Manor also claim that Ringgold did not show the required "necessity to condemn the private property." OCGA § 22-2-102.2 (5). They point out that Ringgold is currently occupying the Property and providing services to its customers, and, they argue, it is therefore not necessary to condemn the Property at this time. The uncontroverted evidence showed that the Property, which was centrally located to Ringgold's service area and on an elevation not susceptible to flooding, was necessary for its provision of safe, reliable, and quality telephone service. In the process of negotiations with White, Ringgold determined that there were liens and encumbrances on the Property such that it "probably [could not] get clean title." Ringgold then sought to condemn the Property in rem after White, in his civil suit, sought to eject Ringgold therefrom. Thus, the evidence showed that the Property was required for Ringgold's provision of reliable telephone service and that its continued access to the Property was in doubt. See OCGA § 22-2-101 (Special Master Act intended to provide a simpler and effective method of condemnation in, among others, "cases where there are conflicting interests or doubtful questions"). "Moreover, Georgia law provides that the condemnor is the exclusive judge of

10

necessity in the condemnation of private property for public purposes." *Mosteller Mill, Ltd. v. Ga. Power Co.*, 271 Ga. App. 287, 291-292 (3) (609 SE2d 211) (2005). See OCGA § 22-2-102.1; *Zuber Lumber Co. v. City of Atlanta*, 237 Ga. 358, 360 (4) (227 SE2d 362) (1976) (The Special Master Act "provides that the condemning body is the exclusive judge as to the necessities of the public needs. A large discretion is vested in a party having the right to condemn, in the selection of particular property to be condemned.") (citation and punctuation omitted). We agree with the trial court that the evidence was sufficient to show the necessity of the taking.

In light of the foregoing, we find that the trial court did not err in denying White and Woodland Manor's motion to dismiss the petition, nor in overruling their exception to the special master's award.

*Judgment affirmed. Dillard and McFadden, JJ., concur*.